[No. 29278.   Department One.   June 16, 1944.]

HAROLD R. PARDEE, *Respondent*, v. ANNE PARDEE, *Appellant*.[1]

*Don G. Abel*, for appellant.

*Lester Huntington*, for respondent.

JEFFERS, J.—This action, which is one for divorce, was instituted by Harold R. Pardee against his wife, Anne Pardee, in the superior court for Cowlitz county.  The complaint, in substance, alleges that the parties were married at Kelso, Washington, on June 22, 1940; that two children have been born as the issue of the marriage:   Carol Diane Pardee, a daughter, now eleven months old, who is in the custody of defendant, and Roderick Pardee, a son, who is two and one-half years old and is now in the custody of plaintiff.

The basis of plaintiff's cause of action is found in paragraph four of the complaint, and is to the effect that defendant has no regard or affection for plaintiff, and, by her acts, words, and personal indignities, has made the home life of plaintiff burdensome in the extreme, so that it has become impossible for plaintiff to live any longer with defendant.

Plaintiff prays that he be granted an interlocutory decree of divorce; that he be given the care, custody, and control of

[1]Reported in 149 P. (2d) 522.

the minor son, and that the care, custody, and control of the minor daughter be awarded to defendant; that plaintiff pay to defendant such sums as the court shall deem reasonable for the support and maintenance of the minor daughter.

Defendant by her answer denied the allegations of paragraph four of the complaint, and in her cross-complaint alleged affirmatively that plaintiff had treated her in a cruel and inhuman manner, so that she had lost all love and respect for him, and that she can no longer live with him as his wife. Then follow certain allegations which form the basis of her contention that she is a fit and proper person to have the custody and control of both minor children. Defendant then prayed that she be awarded a decree of divorce, the custody and control of both minor children, and other relief.

The cause came on for hearing before the court, which, after hearing the testimony, made and entered its findings of fact, conclusions of law, and interlocutory decree.

Findings of fact Nos. 4 and 5 express the court's view of the evidence and form the basis for its conclusions and judgment, and are as follows:

"IV. That the plaintiff has been a kind and considerate husband and very much devoted to his children and is a fit and proper person to have the care, custody and control of the older child of the parties, to-wit: Roderick Leroy, son, aged two years, nine months; and it is to the best interests of said child that he be so awarded; and defendant is a fit person to have the custody of the infant child, Carol Diane Pardee.

"V. That for sometime last past, the defendant has maintained toward plaintiff an indifferent attitude, has made no attempt to conceal the fact that she had neither affection nor regard for the plaintiff as her husband; and that the defendant has habitually used vile, obscene, filthy, profane and indecent language towards the plaintiff and habitually used such language in the presence of the children of the parties and friends and neighbors; that the defendant has become infatuated with one Johnny Benson and for a considerable bit of time last past has carried on a considerable correspondence with him and has told friends and acquaintances that she intended to divorce plaintiff and then marry said Johnny Benson; and by numerous acts, words and personal indignities, made the home life of the plaintiff burden-

some in the extreme; that on or about the 6th day of June, 1941, defendant left the home of the parties in Longview, Washington, and is now residing with her parents at Pe Ell, Lewis County, Washington."

The trial court concluded that defendant had been guilty of cruel and inhuman treatment toward plaintiff; that plaintiff was entitled to a decree of divorce; that the relief prayed for in defendant's cross-complaint be denied and the cross-complaint dismissed. The court further concluded that plaintiff was entitled to have awarded to him the care, custody, and control of the minor son, subject to the right of visitation on the part of defendant at all reasonable times, and subject to the right of defendant to have such child with her on the first Saturday of each and every month thereafter; provided, however, that defendant shall return the child to plaintiff's custody not later than five o'clock p. m. on the following Monday, and when the child reaches school age he shall be returned to the custody of plaintiff not later than five o'clock p. m. on Sunday following the first Saturday of the month. The court also concluded that defendant was entitled to have awarded to her the care, custody, and control of the minor daughter, subject, however, to the same right of visitation on the part of plaintiff, and subject to the same additional provisions as were attached to the award of the son to plaintiff.

The court also entered its conclusions relative to the property of the parties, and concluded that defendant was entitled to have awarded to her the sum of thirty-five dollars per month for the support and maintenance of the minor daughter, and the further sum of eighty-five dollars as attorney's fees, together with her costs and disbursements.

The court further concluded that neither child should be removed from the state of Washington, and that the court should retain jurisdiction of the children for the purpose of making necessary orders with respect to their welfare.

An interlocutory decree in accordance with the conclusions was entered on November 10, 1943. Defendant has appealed from such decree, and assigns error on the finding of the trial court that plaintiff is a fit and proper person to

have the custody and control of the minor son, and in concluding and decreeing that plaintiff is entitled to have the care, custody, and control of his son awarded to him. No error is based upon the award to plaintiff of the decree of divorce, nor upon the disposition of the property, the awards made to defendant, or the dismissal of her cross-complaint.

The only questions involved on this appeal are whether or not the trial court erred in finding and concluding that plaintiff was a fit and proper person to have the care, custody, and control of the minor son, and whether or not the court abused the discretion vested in it by awarding the minor son to the father rather than to the mother.

There is no question but that the trial court gave very serious consideration to the problems presented in this case, and especially to the disposition which should be made of these young children, having in mind the welfare of each child.

■ We have so often held, in cases of this character, that the welfare of the children is of paramount consideration in determining the question of custody, that no citation of authority would seem to be necessary. However, we call attention to the cases of *Eliason v. Eliason*, 10 Wn. (2d) 719, 118 P. (2d) 170, and *Taylor v. Taylor*, 14 Wn. (2d) 293, 126 P. (2d) 855.

The gist of appellant's argument seems to be that, inasmuch as the court found that she was a fit and proper person to have the care, custody, and control of the minor daughter, and awarded such custody to appellant, she was also a fit and proper person to have the custody of the minor son; that, this being true, and because of the age of the little boy, appellant should have been awarded his custody as well as that of the little girl.

Appellant states that it has been repeatedly held by this court that the natural mother of children, particularly where the children are of tender years, will not be deprived of their custody unless it clearly appears that the mother is such an unfit and immoral person that placing the children in her care would endanger their welfare. It may be admitted that we have so held, but, in *Eliason v. Eliason, supra,*

after stating the rule contended for by appellant, and the rule that the welfare of the children is of paramount consideration in determining their custody, we stated:

"This court has, while not in any way disregarding the rule for which appellant contends [which was the same rule as contended for by appellant herein], modified it in special cases in order to give precedence to the rule that the paramount consideration of the courts is the welfare of the child."

The opinion further states:

"In cases of this nature, we give great weight to the conclusions of the trial court. Consequently, its finding will not be changed unless an abuse of discretion patently appears."

We also desire to call attention to *Taylor v. Taylor, supra,* where, after two minor sons, aged three and five, had been by the court awarded to the father, the mother, on appeal to this court, made much the same contention as is being made by appellant herein. We affirmed the judgment of the lower court, notwithstanding the fact that no immoral conduct on the part of the mother had been shown.

It seems to us no good purpose would be served by setting out in detail the testimony of the parties to this action, or that of their respective witnesses. We are of the opinion that the testimony of respondent and his witnesses amply support findings of fact Nos. 4 and 5, hereinabove set out. The testimony also shows that respondent's parents, with whom he is now making his home, and with whom he expects to continue to reside, live at Castle Rock, in Cowlitz county. This home consists of a seventeen acre ranch, upon which there is a five-room house. Roy Pardee, respondent's father, is fifty-six years old, and his wife is fifty-four. The father testified it was agreeable to both him and his wife that respondent bring both the children into their home.

Appellant admitted that she used profane and obscene language at times, when she was angry at respondent, but stated that her language was no worse than that used by respondent. She denied that her relationship with John Benson was other than a friendly one, which had existed since their school days. She admitted that she had received

letters and a locket from Benson, but stated that her husband knew about her receiving the letters and the locket, and made no objection to her receiving them.

Appellant's witnesses, two of whom lived in Kelso and three at Pe Ell, testified generally that appellant was a good mother, and took good care of the children. The witnesses who lived at Pe Ell and were acquainted with appellant's parents were of the opinion the children would have a good home there.

Appellant's parents are Finnish people, and the mother speaks very little English.

Appellant testified that she and her husband quarreled a great deal; that their quarrels usually started over respondent's desire to visit his parents at Castle Rock. Appellant apparently did not want to go with respondent, and did not want him to go. This is the third time appellant and respondent have separated. The real reason for appellant's leaving respondent, to use her own language, was that she just could not take married life because of the excessive sexual demands made upon her by respondent.

It is apparent that respondent and appellant expect to continue to reside with their respective parents, and there is no doubt that much of the responsibility of the care of the children will fall upon the parents. The parents of each of the parties are undoubtedly good people, and seem willing to accept this added responsibility.

The trial court undoubtedly considered that the language used by appellant in the presence of the children would be much more detrimental to the welfare of the little boy, who has reached an age where he will begin to observe the actions of his parents, than it would be to the welfare of the little girl, not yet a year old.

We do not think it necessarily follows that, because the court found appellant was a fit and proper person to have the care and custody of the little girl, she was a fit and proper person to have the care and custody of the boy.

■ We fully appreciate it is unfortunate that children have to be separated, and it may be that some other solution of this problem could have been worked out, but after an ex-

amination of the record we are not prepared to say that the trial court, in finding and concluding as it did, abused the discretion vested in it. The court, in arriving at what would be best for the welfare of these young children, had many things to consider—not only the fitness of the respective parties, but also the homes to which the children would be taken, the financial ability of respondent to provide for the children wherever situated, and other questions which the trial court was certainly better able to determine from observing all the witnesses than are we from reading a cold record.

In concluding that the judgment of the trial court should be affirmed, we are not influenced by any claim that there was immoral conduct on the part of appellant, in so far as her relations with John Benson are concerned.

We are of the opinion that this case is one which calls for a modification of the rule relative to the custody of young children, as did the cases of *Eliason v. Eliason* and *Taylor v. Taylor, supra.*

The judgment of the trial court is affirmed.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.