[No. 29871. Department Two. July 11, 1946.]

OLIVE B. ROGERS, *Respondent,* v. FRED A. ROGERS, *Appellant.*[1]

[1]Reported in 170 P. (2d) 859.

*Roy A. Redfield,* for appellant.

*Frank R. Freeman* and *Harvey Erickson,* for respondent.

JEFFERS, J.—On January 23, 1945, Olive Rogers filed a complaint against her husband, Fred Rogers, for a divorce. The complaint was based on the ground of cruelty, in that defendant had, on numerous occasions, been guilty of physically striking and severely beating plaintiff; that defendant had, on several occasions, been guilty of striking both minor children of the parties; and that defendant had an extremely violent temper and was of a jealous disposition.

At the time of the filing of the complaint, there had been one child born as the result of this union, namely, Janet Aline Rogers, age two years. Lawrence Raymond Rogers, age four, a child of plaintiff by a former marriage, was also a member of the family, having been adopted by defendant on August 3, 1942.

The parties were married May 23, 1942. Prior to the trial of the action, the parties entered into a property settlement, whereby defendant agreed to transfer to plaintiff, in the event she should be awarded the care, custody, and control of the minor children, all his right, title, and interest in and to a certain contract for the purchase of the west thirty-four feet of the east one hundred eight feet of lot 10, block 35, Central Addition to Spokane. The equity of the parties was, by stipulation, valued at fifteen hundred dollars. Defendant also agreed to turn over to plaintiff certain household goods and furniture, with the exception of a radio, which defendant was to have.

It was further stipulated that, if the children should be awarded to plaintiff, defendant would pay to plaintiff, for their support and maintenance, the sum of sixty dollars per month for a period of twenty-four months, beginning April 1, 1945, and the sum of fifty dollars per month thereafter until the children should reach their majority.

The cause came on for hearing on March 15, 1945. The defendant made no appearance in the action. The state appeared by the deputy prosecuting attorney. Plaintiff appeared in person and by counsel and introduced testimony in support of her complaint, and thereafter, on March 15, 1945, the trial court made and entered findings of fact, conclusions of law, and an interlocutory decree.

The court found the allegations of the complaint as to cruelty to be true, and that plaintiff was a fit and proper person to have the care, custody, and control of the two minor children. The right of visitation was given defendant. The court further found that it was necessary that plaintiff have the community property mentioned in the property settlement set aside to her as her sole and separate property, in order that she be able to maintain a home for the children. The court further found that, in order that plaintiff be able to support and maintain the children, defendant should be required to pay to her the sum of one hundred dollars per month, until the children should become of age or be emancipated.

The interlocutory decree followed the findings and was in accord with them.

On April 2nd, less than one month after the entry of the above order, defendant filed his petition to vacate and set aside the order of default and asked that he be permitted to file an answer and cross-complaint. On May 9, 1945, counsel for the respective parties stipulated in writing that the cause might be reopened, that plaintiff might file an amended complaint, that defendant might file an answer and cross-complaint, and that the issues so raised might be tried before the court without prejudice as to the former decision. It was further stipulated that the judgment of default previously entered against defendant be set aside, and the judgment vacated.

On May 15, 1945, plaintiff filed an amended complaint, which was also based upon the ground of cruelty, and, in addition to alleging the grounds set up in the original complaint, plaintiff further alleged that defendant had abused her in public and had used every means to scandalize her

in public, by falsely charging her with associating with other men and having indecent relations with them. It was further alleged that it was necessary that plaintiff be awarded all the community property, in order that she be able to support herself and the minor children. (The property was the same as awarded to her in the prior decree.) It was further alleged that if the two minor children were awarded to her, defendant should be required to pay to her the sum of one hundred dollars per month for their support.

Defendant, by his answer, denied that he had been guilty of cruel and inhuman treatment toward plaintiff; admitted that he struck plaintiff on two occasions, under provocation; denied that he ever struck the younger child, but admitted spanking the older child as a matter of discipline; denied that he had been guilty of abusing or scandalizing plaintiff in public; and admitted that the parties are incompatible and that a divorce is the only solution.

Defendant then alleged that plaintiff had been guilty of cruel treatment toward him; that she had been untrue to him in spirit and in fact; that she had gone to public dances and to dine-and-dance places for the purpose of meeting men and dancing with them, contrary to defendant's wishes; that she had deceived defendant in regard to her association with other men; that, in the summer or fall of 1944, she became enamored with one Sergeant LaRance; that, following the entry of the interlocutory decree (March 15, 1945), plaintiff became bold in her conduct with the sergeant, and defendant felt it his duty to observe her; that, on the evening of March 25th, he saw plaintiff with the sergeant and observed their actions, as hereinafter set out in a statement of the facts, and, on the evening of March 27th, defendant again saw plaintiff and LaRance under circumstances hereinafter set out.

Defendant alleged that plaintiff is not a fit and proper person to have the custody of the children; that he is in a position to supply adequate care and support for the children, with the assistance of his own parents; that all the community property should be awarded to him.

The reply denies the affirmative allegations of the answer and cross-complaint.

On September 19, 1945, the court entered an order reopening the case, in accordance with the stipulation.

The cause came on for hearing on September 19, 1945, and, after some eighteen witnesses had been sworn and testified and after the argument of counsel, the court, on October 24, 1945, made and filed its findings of fact, conclusions of law, and an interlocutory decree. An appeal and supersedeas bond was filed on October 25th, and, on the same day, defendant gave notice of appeal from the decree.

Appellant makes thirteen assignments of error. We see no reason for setting out the assignments of error, as appellant states that but one question is really presented, namely, should the custody of the children of the parties be awarded to their father, or to their mother? While the incidental questions in regard to a property settlement and the payment of support money are raised, we are of the opinion that the interlocutory decree should not be changed unless the decree as to the care, custody, and control of the children is modified.

This action, because of the facts set forth by the respective parties, presented unusual difficulties to the trial court in determining what would be for the best interest of these two little children. A careful examination of the statement of facts shows that the court followed the testimony closely, examined some of the witnesses himself in an endeavor to get at the real facts, and even talked to the parties in chambers after the evidence was presented, in the further hope that some solution of the problems could be reached.

The trial court's oral opinion, delivered on October 8th, after some two weeks consideration of the evidence in the case, indicates the thought the court had given to the matter, especially to the problem of who should be awarded the care, custody, and control of the children. In this oral opinion, the court indicated the finding it wanted presented relative to certain acts of Mrs. Rogers, testified to as having occurred on March 27, 1945, and we may say here that we

are in accord with the court's reason for making such a finding.

The respective parties to this proceeding were each twenty-one years of age. There can be no question but that they had both been raised under good home influence. Fred Rogers had a ninth grade education and, since he had left school, had apparently been industrious and a young man of good habits. It does not appear what schooling Olive Rogers had, but undoubtedly not more than a high school education, as she married defendant when she was eighteen, and she had previously been married and had a child by the former marriage. We may say here that, so far as the record shows, Olive divorced her former husband because of certain acts committed by him which had nothing to do with any trouble between the parties.

Mr. and Mrs. Smith, respondent's father and mother, are estimable people; there is not one word of evidence in the record to the contrary. They had Larry, respondent's child by her first marriage, for over a year prior to the time he was taken into the home of the parties to this action after their marriage. Larry has been permitted to visit in the Smith home a great deal since the marriage of the parties and has spent many weekends with his grandparents. The testimony shows that the Smiths love this little boy, and that they also love Janet, the little girl born to this marriage, and that they are willing to take both the children, if that be the order of the court.

The testimony also showed that Mr. and Mrs. Rogers were fine people, and that they loved these little children and had them in their home, especially Janet. However, the testimony shows that Mr. Rogers had been injured six years ago and rendered completely unable to work, and that as a result of his injury he was nervous and did not sleep well. Since such injury, Mrs. Rogers had worked, and, as she said, was the head of the family. The Rogers also had in their home and as a part of their family an old gentleman, whom they had taken in because of a friendly feeling toward him. Mr. Rogers did not testify in the case, but Mrs. Rogers stated that he liked children, that they did not

bother him, and that it was their desire to take both the children.

On March 27, 1945, appellant took Janet from respondent's home to the home of his mother, where she has been since that time, and Mrs. Rogers has not worked since Janet came into her home.

Appellant had been drafted and expected to be inducted into the armed forces about October 13, 1945. In view of this situation, appellant had some doubt about his mother taking the responsibility of both the children, without his being there to help, and indicated that he thought it might be better for the Smiths to take Larry and his mother take Janet.

The testimony shows that the community property consisted of a home in which the parties had an equity of some twelve or fifteen hundred dollars and on which they still owed several hundred dollars. In addition they had some furniture, valued at about five hundred dollars.

These young people began to have trouble shortly after they were married. However, as stated by the trial court, we think that, in many instances revealed by the record of some three hundred pages, mountains were made out of mole hills, and that the parties did not consider many of the acts testified to as serious until this action was commenced, when, as usual, everything was raked up and presented to the court.

While there is some testimony that respondent would on occasions leave the children at home in the care of a neighbor, and some testimony that respondent on one or two occasions left the children at home, with too hot a fire in the stove, while she went to the store, there is nothing in the testimony, as we read it, which convinces us that respondent ever, by any such conduct, neglected the children, or did anything other than many good mothers have done.

All the witnesses testified that respondent kept the children clean and neat, and that they seemed perfectly happy together in the home; that she was kind to and considerate of the children; in other words, that she was a good mother.

The main difficulty between the parties, at least up until the time respondent met Sergeant LaRance, seems to have arisen over the fact that appellant thought respondent was occasionally going to places she should not have gone, especially a place called "Joe's Tavern," and he was suspicious that she was associating with other men. Much of appellant's suspicion was based on conjecture and hearsay, although it does appear that respondent did visit Joe's place two or three times, but nothing was done by her at those times which reflected on her character, unless it may have been because of the reputation of the place, and what that may have been does not appear herein.

Respondent testified to four or five instances when appellant struck her, and at least one occasion when he knocked her down. Appellant admitted that, on two occasions, acting under provocation, he slapped respondent. Respondent also testified that, on one occasion, becoming angry with Larry, appellant took the child by the arm and threw him across the room; that he would punish both children, especially Larry, too severely for not obeying him. This was denied by appellant.

Appellant also became suspicious of respondent in regard to her association with some dentist, when she was having some work done, but there is nothing in the record which shows that respondent was conducting herself in any manner toward, or had any association with, this dentist which reflected on her character.

Respondent may not have been as co-operative as she might have been, and she may have used some deceit in telling appellant where she was going on some occasions, but while we do not uphold such practices between husband and wife, it should be kept in mind that appellant was very insistent, to say the least, that respondent should not go to certain places or associate with certain people, and his suspicion had caused him to follow her on at least one occasion when she said she was going to a church meeting. On this occasion, respondent apparently observed that she was being followed by appellant and a friend, one William Berger, and she got out of the bus in which she was riding.

She and appellant had some conversation, after which she got in the car with appellant and went home. Respondent was alone on this occasion.

The real cause of the trouble, and the real cause of appellant's claiming that respondent is not a fit and proper person to have the custody of their children is, in our opinion, based upon respondent's association with Sergeant LaRance. Respondent apparently met the sergeant shortly before the interlocutory decree in the original divorce action was rendered (March 15, 1945). Just how often respondent may have seen the sergeant prior to that date, does not appear, but apparently not very many times.

After the interlocutory decree was entered, which gave respondent the home and furnishings, appellant continued to stay there for some four days, in spite of respondent's demands that he move out. During the time appellant continued to stay in the home, the sergeant called on respondent. Nothing appears to have been done by either respondent or the sergeant, at any of the times mentioned, which reflected on either of them. On the evening of March 25th, appellant testified he went to respondent's home to see the children, and, as he approached the home, he heard voices. He stated that he wanted to see who was there before he went in, so he went around the house, found a window where the curtain was torn, looked in and saw respondent and the sergeant. On this occasion, appellant's friend Berger was with him, and he also looked in the window, when, as testified to by appellant and Berger, they saw respondent and the sergeant "necking." After watching for some time, appellant went over to a neighbor, Mrs. Kelly, and said to her: "Come, Alta, do you want to see a show?" Mrs. Kelly went with appellant to respondent's home, where she stood up on a box, peeked through the window, and saw respondent and LaRance kissing each other. Appellant, on this occasion, watched the actions of respondent and the sergeant from about nine p. m. until eleven o'clock, and saw nothing occur further than as stated. Appellant also called Mrs. Hagen, another neighbor, to come see what was going on the night of the twenty-fifth.

Appellant stated that, before the sergeant left the house, he heard respondent and LaRance making an engagement for Monday night, but apparently LaRance did not appear Monday night. Appellant and Berger went back Tuesday night and again looked through the window, when, as testified to by appellant, he saw respondent and LaRance in a position on the davenport from which he concluded they were committing adultery. Apparently Berger did not stay at the window as long as appellant, for he did not see any such act. Appellant again called Mrs. Kelly and Mrs. Hagen, but they did not arrive in time to see the act testified to by appellant, although they did get there in time to see the condition of the sergeant's clothes and to hear him make a statement from which they concluded he had had sexual relations with respondent. Appellant, not being satisfied with what had occurred, entered the house, took respondent by the arm and pulled her out on the porch, where he pulled up her clothes to demonstrate that she did not have on certain undergarments with which he apparently thought she should be clothed.

After the above occurrence, appellant took Janet to his mother's home, and respondent and Larry went to the home of her mother and father, where they have since resided.

After the incident above related, appellant brought Mr. and Mrs. Smith to respondent's home, where he told them what had occurred and had Mrs. Kelly tell what she had seen.

It may be further stated that appellant admitted that on the night of March 25th he did not attempt to go in the house and remonstrate with respondent, nor did he talk to her between the night of the 25th and the night of the 27th. On the latter night, after he and Berger had watched through the window, and after he had called Mrs. Kelly and Mrs. Hagen, he pushed or broke in the front door and confronted respondent and LaRance, and, as stated, Mrs. Kelly and Mrs. Hagen came on the scene after that time.

It will be remembered that, at the time of the above occurrence, the home had been awarded to respondent by

the interlocutory order. As indicated, there are pages of testimony in the record relating to acts of the respective parties, but we do not deem it necessary to set out more of them, believing, as we do, that the acts above enumerated were the real cause of appellant's petition to reopen the case. There is no testimony which would in any way indicate that respondent has not in all respects conducted herself properly since the night of March 27, 1945. The trial judge was impressed with the fact that respondent loved the children, especially so because, when he asked her whether or not she thought the children should be separated, even though he might decide to give them to appellant or appellant's parents, respondent said no.

The trial judge realized, of course, that any decree rendered might be later modified, in so far as the children were concerned; so, in view of all the circumstances, including the fact that appellant was about to be inducted into the military service, he granted appellant a divorce, but awarded the care, custody, and control of the children to respondent, with the right of visitation reserved to appellant. The court specifically found that both respondent and appellant were, at the time of trial, fit and proper persons, but that it was for the best interest of the minors that their care, custody, and control be awarded to respondent.

The court also found that the furniture should be awarded to respondent and that the home should be sold and the proceeds invested in war savings bonds payable to the children when they became of age; that Mrs. Rogers, appellant's mother, who had experience in the real estate business, act as trustee for the purpose of disposing of this property; and that the trustee be authorized to pay out, for the benefit of the minors, certain sums before they became of age, if in her judgment she deemed it for their interest so to do. Appellant was ordered to pay the sum of sixty dollars per month to respondent for the support of the minor children.

In regard to respondent's acts on March 27, 1945, the trial court found:

"That the plaintiff above named has been guilty of cruel and inhuman treatment rendering defendant's life burdensome; that on or about the 27th day of March, 1945, plaintiff was guilty of indiscretionate acts and misconduct; that defendant has alleged and proven sufficient grounds for divorce to grant him a decree of divorce from the plaintiff as prayed for in his cross-complaint."

■■ We have so often held that the welfare of the children is the main consideration in a case of this kind, and that the trial court is better able to determine that question than this court, that no citation of authority would seem to be necessary. *Pardee v. Pardee,* 21 Wn. (2d) 25, 149 P. (2d) 522; *Jones v. Jones,* 23 Wn. (2d) 657, 161 P. (2d) 890.

■■ We have also stated that in cases of this nature we will give great weight to the conclusions of the trial court, and consequently its findings will not be changed unless an abuse of discretion patently appears. *Eliason v. Eliason,* 10 Wn. (2d) 719, 118 P. (2d) 170.

■■ The trial court did not seek to condone, nor does this court, the acts of respondent on the night of March 27th; nevertheless, at the time of trial, after all the evidence was in, and after the trial court had carefully considered the whole matter, the court found that respondent was a fit and proper person to have the care and custody of the minors, and that their welfare would be best served by awarding their custody to her.

We are unable to say, after a consideration of the record, that the findings of fact as made and entered are not supported by substantial evidence, nor are we able to say that the trial court did not make the best disposition of this case, including the award of custody of the minors to respondent, that was possible under the situation presented to it.

We feel, as apparently did the trial court, that this one act of respondent, when weighed against all the other facts, was not sufficient to indicate that she was not, at the time of trial, a fit and proper person to have the custody of these children.

In conclusion, may we say that we are unable to understand how appellant, if he had only the welfare of the

children at heart and not a desire to obtain their custody at any cost, could have done some of the things he did on the nights of March 25th and 27th.

The interlocutory decree of divorce as entered is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and CONNELLY, JJ., concur.