[No. 30396. Department One. July 2, 1948.]

RICHARD C. FLECK, *Respondent*, v. JUNE E. FLECK, *Appellant*.[1]

*Jacob Kalina*, for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann*, for respondent.

SCHWELLENBACH, J.—This is another case involving the custody of a child.

In the spring of 1944, while the plaintiff husband was in the service and was stationed in Texas, the defendant wife visited him. She became enamored of one Tony Remo and wanted to marry him. It was agreed that the husband would file for a divorce.

May 11, 1944, the plaintiff instituted divorce proceedings in King County. June 6, 1944, defendant answered, asking for a divorce. The hearing was held October 13, 1944, and the decree granted to the defendant. The child, Kerry Lee Fleck, was born September 1, 1944. The decree provided:

"That the defendant shall have the sole custody of the child born of said marriage herein and that plaintiff has

[1]Reported in 195 P. (2d) 100.

consented and does hereby consent to the defendant exercising her best judgment in connection with the adoption of said child by proper persons in the future."

At the time of the divorce hearing, the plaintiff was in Italy, but was represented by counsel.

The marriage between defendant and Remo did not materialize. He disappears completely from the picture. But that did not seem to discourage the defendant, because, shortly after the issuance of the final decree, she married a man named Witty and moved with him to California. This marriage did not last, and after a few months they separated and she returned to Seattle with her baby. At the time of the hearing in question, Witty was confined in the state penitentiary in Arizona.

Upon her return from California, the defendant rented an apartment in the University district in Seattle and obtained employment as a bookkeeper and stenographer. The lady who rented the apartment house testified that, several times a week, the defendant would spend her evenings in taverns and leave the child home alone. At times the child would wake up and cry hysterically, and the landlady would have to comfort her.

In the meantime, the defendant started writing bad checks. Her father took care of them for her. But she continued to write checks. She was charged with petit larceny on November 7, 1946, and given a suspended sentence. Later, she was charged with another similar offense and on March 27, 1947, was sentenced to six months in the county jail. She was there confined at the time of the hearing which is the subject of this controversy.

In the interlocutory decree, the plaintiff was ordered to pay the defendant an allotment of fifty dollars per month, but no payments were ordered for the support of the child. These payments continued up to the time of his discharge from the service on March 23, 1946, when all payments to the wife ceased.

When the defendant was arrested, the plaintiff was contacted by the prosecutor's office and urged to contribute to the child's support. He did not take kindly to this sug-

gestion and was called back a second time, when it was arranged that he was to pay thirty-five dollars a month, twenty-five dollars current and ten dollars arrears. Instead of doing so, he filed this petition to modify the decree, changing the custody of the little girl from the defendant to himself. The prosecutor's office then caused a warrant of arrest to be issued against him for nonsupport, and he started and continued to make the payments.

At the hearing, the plaintiff testified that he was employed as a letter carrier for the post office department at two hundred dollars a month; that his father and mother had consented to care for the child until he could remarry; that he contemplated marrying a lady who had a five-year-old daughter of her own, and who would like to take plaintiff's child.

He admitted that he had never given the child any Christmas or birthday gifts, had never contributed to her support voluntarily, had never had the child with him, and had only seen her a couple of times. His father and mother both testified that they were willing to take the child. But they both admitted that they had never seen the little girl, had never sent her any gifts, and had never called up and inquired about her. Their testimony clearly indicated that they had no affection whatsoever for the child. In fact, although they were willing to take her because they felt it their duty to do so, they displayed an aversion toward her.

Upon the defendant's arrest, her (defendant's) mother took the little girl into her own home. She was giving her good care and would continue to do so. From the time of the child's birth, she had looked after her whenever necessary, and had assisted in buying her clothes. She displayed a real affection for the little girl and asked for her custody.

The trial court found that the father was a fit and proper person to have the child and that the mother was not. It awarded the custody of the child to the father. The order also required the plaintiff to reimburse the defendant in the sum of one hundred dollars, which she had paid for attorney's fees. Defendant appealed.

The trial judge was of the opinion that it was an imposition to require old folks, who have raised their families, to assume the responsibility of raising the children of their offspring, who find themselves in a divorce court. Although he was not much impressed with respondent, he felt that it was respondent's duty to care for his own child, and placed that burden upon him.

We are very much in sympathy with the views expressed by the trial court, but we are faced with this problem. What about the little girl? It is not necessary to cite authority for our rule that the welfare of the child is the paramount consideration in determining its custody. Where the best interests of the child will be served by giving it into the custody of the grandparents, rather than to either parent, such will be done. *Brookshire v. Brookshire,* 29 Wn. (2d) 783, 189 P. (2d) 636. See, also, *Fitzgerald v. Leuthold,* 30 Wn. (2d) 402, 192 P. (2d) 371.

A child is entitled to more than mere security. It is entitled to love, care, and affection. This little girl, not yet four years old, has endured more than her share of handicaps. She should not be compelled to suffer the shock of being taken from a home of contentment and tender care, and placed in the home of strangers. Although respondent and his parents are her own flesh and blood, and although they are very estimable people, she has never known them. She has never seen them. They are just as much strangers to her as though they belonged to another family.

That portion of the order appealed from requiring respondent to pay appellant one hundred dollars is affirmed. That portion taking the custody from appellant is affirmed. That portion awarding the custody to the respondent is modified to place the custody in appellant's mother, Mrs. Nellie Musiel, with right of reasonable visitation in both respondent and appellant. The child shall not be moved from King county without permission of the court. Neither respondent nor appellant shall have the right to take the child away from Mrs. Musiel's home without permission of the court. The mother shall not be permitted to live in the same house as the child unless she quits drinking.

Although we feel that thirty-five dollars a month is not sufficient, we are guided by the decision made by the prosecutor's office. Respondent shall pay to Mrs. Musiel, for the support of the child, until further order of the court, the sum of thirty-five dollars per month. Later, upon a showing of a change in conditions, either the father or mother should be permitted to petition the court for an order modifying the decree to award the custody to either of them.

MALLERY, C. J., MILLARD, SIMPSON, and HILL, JJ., concur.