[No. 30502.   Department One.   September 16, 1948.]

OLA E. BRAUN, *Respondent,* v. WALTER J. BRAUN, *Appellant.*[1]

[1]Reported in 197 P. (2d) 442.

*Rummens & Griffin* and *Kenneth P. Short*, for appellant.

*Anne Marie Thompson* and *Howard J. Thompson*, for respondent.

HILL, J.—In this divorce action, the trial court granted the wife a divorce on the grounds of cruel treatment and personal indignities rendering her life burdensome, and granted the husband a divorce on the ground of adultery. The conclusions of law set forth the statutory grounds on which the divorces were granted, and the findings of fact set out the conduct which warranted the conclusions of law. The interlocutory order or decree stated no grounds, but simply stated that each party was ". . . entitled to, and each is hereby awarded an Interlocutory Order of Divorce from the other."

The children, both girls, aged five and two years at the time of trial, were awarded to the mother, together with sixty dollars a month for their support, the father being given the right to take the children to the home of his sister for visitation purposes but not to retain custody for more than forty-eight hours without the consent of the mother. She was awarded the household furniture and furnishings, he was awarded a 1937 Ford automobile, and they were to own the family home as tenants in common, she to have the right to live therein until the further order of the court.

The husband appeals, the primary purpose of the appeal being to demonstrate error by the trial court in awarding the custody of the children to the mother.

The evidence in this case brings us to a new low in nastiness and will not be detailed except to the extent that may be necessary to make clear the reasons for our holdings.

Before coming to a consideration of the basic question, we may summarily dispose of two of the assignments of error. Appellant insists that the interlocutory decree of divorce should have stated the specific ground of his divorce from respondent, *i. e.*, adultery. We require, in divorce cases, that the court make and file findings of fact

and conclusions of law (Rem. Supp. 1947, § 988); and, in any subsequent hearing involving the custody of children, the court would certainly refer to such findings and conclusions. Certified copies of interlocutory divorce decrees may be required for divers purposes, and we can see no necessity for publicizing the cause when, in most instances, the fact of divorce is all that need be established. The trial court's refusal to state the grounds of divorce in the interlocutory order or decree will be upheld.

Appellant insists that the respondent was not entitled to a divorce because

". . . the award was made to the admitted adulteress with a finding castigating the appellant and based solely on the uncorroborated testimony of the admitted adulteress. Not a relative, friend or neighbor testified to any fact supporting the finding against appellant."

The trial court apparently and properly disregarded the charges that the appellant was a Communist, which certainly would not constitute cruelty *per se* and be grounds in itself for a divorce.

The other acts charged against him, to which the trial court referred in its summing up and in its findings, were matters to which the respondent concedes there were no witnesses except herself and which the appellant denies. Confronted with a situation where there are only two witnesses, one of whom asserts and the other denies, a trial judge, if undecided whom to believe, may find that the acts complained of have not been established by a preponderance of the evidence; or, believing one and of necessity disbelieving the other, he may find that the things complained of did or did not happen. In this case, the trial court believed the respondent and disbelieved the appellant.

If the appellant's actions were such as the respondent says they were, he was guilty of cruelty and personal indignities toward her warranting a divorce. We find it difficult to believe that a man whose neighbors, friends, and associates think so highly of him could be guilty of the things which respondent charges appellant, yet we cannot say that there is not sufficient evidence to support the find-

ings of fact made by the trial court. As stated in *Sewell v. Sewell,* 29 Wn. (2d) 190, 186 P. (2d) 372, "The familiar formula: The trial court saw and heard the witnesses, and so forth, applies to this appeal." The trial court's awarding of a divorce to the respondent will be affirmed.

We now come to the assignment of error relating to the custody of the children. The wife admittedly is guilty of an act· of adultery with a man she had never previously seen, whom she dated over the telephone and invited to her home, and whose name she "thinks" is McCain. A neighbor woman testified that the wife had endeavored to interest her in dates with men other than her husband. There is evidence that respondent was so infatuated with a Russian lover that she said she would go to China to live with him; and there is evidence of her absence from her home on frequent occasions until the early hours of the morning.

Respondent urges that only one act of adultery is proved, but it is to be noted that she never asserted that this was her only act of adultery. Her denials of previous adultery were rigidly limited to "that house" and "that man":

"Q. Had you ever had a man in that house before? A. No, sir. Q. Had you ever had the man that was in the house that night before? A. No, sir."

■ We are satisfied that no woman who invites a man to her home sight unseen, as respondent did on the occasion of the proved adultery, is a novice in the practice. This was no first surrender of the citadel of virtue. To use Judge Chadwick's expression, "She threw out a skirmish line." *Rockwell v. Day,* 101 Wash. 580, 172 Pac. 754. This was no *grande passion* and no deep infatuation; it was just adultery reduced to the lowest common denominator. Not merely the act, but the casual character of it, stamps this woman as being unfit to have these children in her care.

■ This conclusion is reached with full awareness of the rule, frequently announced by this court, that the custody of children of tender years will not be taken from the mother unless it be clearly shown that she is so far an unfit and improper person to be entrusted with such custody as to

endanger the welfare of the children. *Freeland v. Freeland,* 92 Wash. 482, 159 Pac. 698; *Allen v. Allen,* 28 Wn. (2d) 219, 182 P. (2d) 23.

It is true that she had, by careful nursing, assisted the physician in the cure of a skin disease caused by food allergies, suffered by the younger child. The trial court, we believe, placed undue emphasis on the necessity of the continuation of the mother's nursing care, and seemed to base its decision that she should have custody of the children on that point. The evidence indicates that the child's skin is now almost clear unless she gets food that she should not have. It is also conceded that the mother sewed for the children and kept them well dressed. But something more than physical care is needed in the rearing of a child. *Warnecke v. Warnecke,* 28 Wn. (2d) 259, 182 P. (2d) 699.

Because of the vast experience of the trial judge, we have hesitated to set our composite judgment against his; but we are firmly convinced that these children, the younger of whom will be three years old before the remittitur goes down in this case and who are at the most impressionable age, should not longer be left with their mother, and that his conclusion that she is a fit and proper person to have their custody is patently controverted by evidence concerning which there is no dispute. We do not feel, however, from the record before us, that we are in a position to say what should be done relative to their care and custody.

In justice to the trial judge, it should be noted that very little was presented to him in the way of an alternative disposition of the children. The only person suggested as being able and willing to take care of these children, other than their mother, was Hermine Winn, sister of the appellant. The evidence regarding her fitness for such a responsibility is favorable as far as it goes but is extremely sparse. We garner from the record that her husband is a refrigeration engineer; that she has a daughter two months older than the elder of the Braun children; that she and and her husband live in a rented house, old-fashioned but nice, with playgrounds and swings and lots of room for the chil-

dren to play; that the Winns can occupy the house as long as they wish; and that she and her husband are willing to take care of the children.

This seems to us far from enough to enable any court to pass upon the suitability of the Winn home as a place for the children. There is no evidence as to the space available in the home or the desirability of the neighborhood. Harmony or lack of it between Mr. and Mrs. Winn, their interests in life, the language habitually used in the home, and its moral and spiritual atmosphere should all be inquired into. Courts are not responsible for the homes which natural parents provide for their children; but when a court, under the authority conferred upon it by Rem. Supp. 1947, § 988, selects or approves a foster home for a child, it assumes a great responsibility.

This is not intended to be a treatise on the subject of selection of foster homes, but to make clear why we do not attempt to make any disposition of the children upon the present record, and why the cause should be remanded to the trial court with instructions to take such additional testimony as it may deem necessary for the purpose of determining whether or not the children should be placed in the Winn home or in some other home or institution, and under what conditions.

The trial court did not make any finding that appellant was not a fit and proper person to have the custody of his daughters, except as that may be implied in the finding

". . . that defendant [appellant] is a fit and proper person to have the right to . . . take the children at reasonable times to the home of his sister for visitation, but that . . . [he] should not retain custody of the children for more than 48 hours without the consent of the . . . [respondent]."

It may be that the trial court would consider him a proper person to have the legal custody, with the requirement that the children live with and be cared for by a third party, as was done in *Allen v. Allen, supra,* as a temporary expedient. On the other hand, this may be a case such as

*Fleck v. Fleck, ante,* p. 114, 195 P. (2d) 100, where it was held that neither parent was entitled to the custody of the child, and it was given to a third person.

In any event, our holding that the mother is not a fit and proper person to have the custody of the children makes it essential that the trial court make a specific finding with reference to the fitness of the father and determine who shall have their legal custody, as well as in whose home and care they shall be brought up.

This disposition of the case makes unnecessary a consideration of the assignment of error based on the trial court's refusal to admit in evidence appellant's exhibit No. 4, a wire recording of the conversation between respondent and her paramour during their occupancy of the bedroom in her home on the night of the admitted adultery. The exhibit was not necessary to prove the adultery, which was conceded. It was relevant, if at all, on the issue of whether respondent is a fit and proper person to have the custody of the children. Having determined on the evidence already in the record that she is not, the questions of the relevancy and admissibility, if relevant, of the wire recording become academic.

The right to a new trial, the failure to grant which is the final assignment of error, so far as it hinges on the failure to admit the wire recording in evidence, has been disposed of. We find nothing in the record that would justify us in saying that the trial court abused its discretion in not granting a new trial on the issues whereon we have affirmed the trial court.

The interlocutory order or decree of divorce is affirmed except as to the custody of the children and except as to the payments to be made to the respondent for their support; and, as to their custody, the cause is remanded for the taking of further testimony to determine who shall have the care of the children and receive the amount which appellant is required to pay for their support, and to determine who shall have their legal custody, and for a disposition of those issues not inconsistent with our holding here.

We have not overlooked the fact that, after the children are taken from the custody of the respondent, there remains no reason why she should be permitted to live in the family home, but that right is given her only "until the further order of the court." Both parties will pay their own costs on this appeal.

BEALS, MILLARD, SIMPSON, and SCHWELLENBACH, JJ., concur.

