[No. 32479. *En Banc.* October 20, 1953.]

PATRICIA LOU HANSEN, *Respondent*, v. ROBERT M. HANSEN, *Appellant*.[1]

[1]Reported in 262 P. (2d) 184.

*Del Cary Smith*, for appellant.

*Gleeson & Smith*, for respondent.

DONWORTH, J.—In this divorce action, the trial court awarded the "custody" of the two minor children to the father, but awarded their care, control, and "physical custody" to the maternal grandparents, with whom the mother made her home. The father appeals, claiming that the trial court erred in failing to award to him the care, control, and physical custody of the children.

The parties were married in April, 1946, and resided in Kennewick during most of their married life. Up until the birth of their first child in 1947, they lived happily together. Between then and the birth of their second child in April, 1951, dissension developed which gradually became more acute.

Early in September, 1950, respondent, although pregnant, commenced work for a gravel company as a bookkeeper. Soon thereafter, she became infatuated with one of her employers, who was a married man with children of his own. In December, 1950, appellant became aware of the situation and spoke to his wife about it. In spite of this, respondent continued her association with this man even after she quit work in February, 1951, to await the birth of her second child.

During the period from March to May, 1951, she wrote endearing letters to her former employer, in which she addressed him as "hubby" and referred to her second child as "our child." These letters were discovered by his wife, who on three separate occasions called on respondent to request the termination of the affair, which was breaking up her home. Respondent did not agree to break off the association, so the letters were turned over to appellant in August, 1951. Seven such letters were admitted in evidence, together with one letter written to respondent by her former employer in in which he referred to respondent as "my darling wife."

This correspondence (which respondent in her testimony characterized as "silly") unmistakably proves that respondent and her former employer were then very infatuated with each other and were intending to marry as soon as each was divorced from his respective spouse.

Following the birth of the second child on April 26, 1951, respondent and appellant attempted a reconciliation. Appellant obtained a transfer of his employment from Kennewick to Great Falls, Montana. After establishing an office there on July 1, 1951, appellant returned to Kennewick to move his wife to Great Falls. They returned to Great Falls together to look for a new home, but respondent remained there only two days. She then left appellant and

went to Spokane, where she has resided at the home of her parents ever since. The two children have been living with her there.

Respondent instituted this suit for divorce on October 11, 1951. She alleged that her husband had treated her in a cruel and inhuman manner, rendering her life burdensome. Appellant cross-complained for a divorce on the same grounds, alleging that his wife had been improperly associating with another man and was not a fit and proper person to have the custody of the children. Her reply denied these allegations.

The cause first came on for trial on March 19, 1952. After the case was partially heard, it was referred to the family court to explore the possibility of a reconciliation. Although appellant was still willing, a reconciliation was not achieved, and on October 8, 1952, the cause again came on for trial.

During the interval between the two trials, respondent and the children went to San Jose, California, where she spent several weeks caring for her sister, who was ill. While there, her former employer with whom she had been infatuated came to see her.

At the trial, respondent several times stated that the last time she had seen the man was "a good month before" the birth of the second child (April 26, 1951) and categorically denied seeing him during her stay in San Jose. When appellant produced evidence that she was lying, she finally admitted that she had seen the man on May 31 and June 1, 1952, but stated that they had not been alone for more than five minutes. Appellant's counsel asked for a continuance in order to bring an eyewitness from California. When the trial reconvened with the witness in attendance, respondent again took the stand and admitted that she had spent the night of May 31, 1952, in a motel cabin with the man and that her previous testimony was false.

It should be noted that respondent's counsel (who is not representing her on this appeal) was innocent of any participation in respondent's flagrant and persistent perjury and, in fact, made every effort to elicit the truth from her on redirect examination.

Respondent in her testimony denied having seen this man since June 1, 1952, and there is no evidence to the contrary. She testified that at the time of the trial she had no intention of marrying him. She and other witnesses testified that she had not been out with men while living at her parents' home in Spokane. The evidence indicates that she devoted herself to the children, kept them neat and clean, and was an affectionate mother.

Respondent's father is assistant chief of police for the city of Spokane. According to the evidence, he and his wife, with whom respondent and the children are living, live exemplary lives. Their home in Spokane has adequate accommodations for all of them, and the parents expressed their willingness to share it with respondent and the two boys, who were eighteen months and five years of age at the time of trial. The parents are both permanently employed.

At the time of trial, appellant was living with his parents in Spokane. If awarded the custody of the children, he proposed to live with his sister and her husband. The husband did not testify, but the sister, Mrs. Frances McMillan, stated that she was willing to assume the care of the children, at least temporarily, while appellant was at work. The McMillans have an adopted daughter four years old. Mr. McMillan is an automobile salesman. The evidence shows that appellant had leased a home in a Spokane residential district with the expectation that the McMillans would occupy that property with him if he should be awarded actual custody of the children. The record does not indicate anything further as to the size, condition, or adequacy of the leased property for this purpose.

At the close of the hearing on October 14, 1952, the trial court in an oral decision stated that respondent had not proven grounds for divorce but that appellant would be granted a divorce on his cross-complaint.

The court further indicated that there was a very serious question as to whether or not respondent was a proper person to have the custody of the children and took the matter under advisement. It was tentatively the court's view,

however, that the older child should be awarded to appellant, but because of the very tender age of the younger child his custody should be awarded to the maternal grandparents, or to respondent with the provision that he remain in the home of the grandparents. The court further indicated reluctance to separate the children, but observed that considering all the circumstances such an order would be entered.

A few weeks later, before any findings of fact or final order were entered, the case was reopened to take additional testimony bearing upon the question of custody. Both parties agreed that the children should not be separated.

The trial court then entered findings of fact and conclusions of law. Appellant was found to be a fit and proper person to have the custody of the children. This finding was based upon undisputed testimony which established that his conduct was above reproach. He was a good father to the children, and even after the separation he visited them regularly, provided for them, and in other ways demonstrated his love.

The trial court failed to make a finding as to whether respondent was a fit and proper person to have the custody of the children.

The final decree granted appellant a divorce upon his cross-complaint and awarded legal custody of the children to him. The decree further provided that the maternal grandparents, with whom respondent made her home, should have the care, control, and physical custody of the children. Appellant was ordered to pay eighty-five dollars per month to them for the support of the children, and he was granted liberal rights of visitation.

This decree was not based upon a finding that appellant had failed to make a sufficient showing as to the adequacy of his living arrangements in the event the custody of the children was to be awarded to him. This being the case, we do not believe that the provisions of the decree awarding the legal custody of the children to appellant should be accorded any significance. For all practical purposes, appellant was deprived of the custody of the children, although

found to be a proper person. He was given no rights with respect to their upbringing other than those of visitation at the grandparents' home and certain limited rights to take the children away with him under specified conditions.

Conversely, although the maternal grandparents were awarded the physical custody of the children, the practical effect of the decree was to actually give respondent that right. Both the grandparents work outside their home, and it is respondent who will actually supervise the children's activities at least during working hours. The decree does provide that the children are to be cared for in the home of the grandparents, who are legally responsible for their well-being, but it does not prohibit their removal therefrom. If the custody had been awarded to respondent, the result (as far as the welfare of the children is concerned) would have been little different.

█ The portion of the decree awarding the custody of the children is as final as such a decree can ever be. It can only be modified by this court on appeal or, after the time for appeal has expired, by petitioning the superior court for an alteration, revision, or modification based upon a change of circumstances.

This appeal presents but one question: Did the trial court abuse its discretion in depriving appellant of the actual care and custody of his two minor sons, even though he was found to be a proper person to supervise their upbringing?

█ The determination of this question places upon this court a very grave responsibility. The paramount consideration must be the welfare of the children, irrespective of the claims or personal desires of the parents. *Saffer v. Saffer*, 42 Wn. (2d) 298, 254 P. (2d) 746.

█ The evidence is not disputed that the grandparents' home has adequate accommodations for the children and that respondent keeps the children neat, clean, well-fed, and in other ways cares for their physical needs. However, this court has many times held that proof that the children's physical needs are met is not enough and is of small importance compared to a wholesome moral and spiritual atmos-

phere. *Warnecke v. Warnecke,* 28 Wn. (2d) 259, 182 P. (2d) 699; *Braun v. Braun,* 31 Wn. (2d) 468, 197 P. (2d) 442; *Merkel v. Merkel,* 39 Wn. (2d) 102, 234 P. (2d) 857.

Before we are able to decide what custody provision would be best for the welfare of the children, it is necessary to know whether or not respondent is a proper person to supervise their upbringing. This issue was squarely presented to the trial court by the pleadings, but no finding was made with respect to it.

In its tentative oral decision, the court, after reviewing the evidence as to respondent's conduct, said:

" . . . it raised a very serious question in the Court's mind as to whether or not at the present time she is a proper person to have the custody of these children."

This language, plus the fact that the court ultimately awarded the custody of the children to respondent's parents, would seem to imply that the court felt that respondent was not a proper person to be entrusted with their upbringing.

However, this portion of the oral decision cannot take the place of a finding. *High v. High,* 41 Wn. (2d) 811, 252 P. (2d) 272.

RCW 26.08.110 [*cf.* Rem. Supp. 1949, § 997-11]; relating to divorce actions provides in part:

"In all cases where the court shall grant a divorce or annulment, it shall be for cause distinctly stated in the complaint, proved, and found by the court. Upon the conclusion of a divorce or annulment trial, the court must make and enter findings of fact and conclusions of law."

Under this statute and Superior Court Rule 17, 34A Wn. (2d) 118, it was the duty of the trial court to resolve this issue of fact. It is not within our province to decide such an issue in the first instance. *Peterson v. Schoonover,* 42 Wn. (2d) 621, 257 P. (2d) 209.

Where because of the failure of the trial court to make an essential finding of fact this court is unable to determine the propriety of a provision in a divorce decree, the case will be remanded with instructions to enter such a finding. *Nelson v. Nelson, ante* p. 278, 260 P. (2d) 886.

On the present state of the record, we are not in a position to determine what custody provision the welfare of the children requires. We can only hold that the trial court erred in failing to make a finding as to respondent's fitness or unfitness to have the custody of the children and, in the absence of a finding that she is a fit and proper person, in permanently decreeing that they shall be brought up in a home where they will be largely under her supervision and influence.

Respondent relies upon the cases of *Rogers v. Rogers*, 25 Wn. (2d) 369, 170 P. (2d) 859; *Norman v. Norman*, 27 Wn. (2d) 25, 176 P. (2d) 349, and *Allen v. Allen*, 28 Wn. (2d) 219, 182 P. (2d) 23, as authority for the present custody arrangement. In each of the first two cases, the trial court, under somewhat similar circumstances, entered findings that both parents were proper parties to have the custody of the minor children. The trial court then awarded the custody to the mother and this court affirmed the action.

In the *Allen* case, *supra*, the father was deprived of the custody of his child by an interlocutory decree of divorce, but did not appeal and the decree became final. Later, he sought to have the decree modified to award him the custody of the child on the ground that circumstances had changed. The trial court refused to modify the decree, but this court, after reviewing the evidence as to the misconduct of the ex-wife, remanded the case with instructions to award legal custody of the child to the father, and to take further testimony to determine whether he could provide an adequate home for the child.

This cause is remanded to the trial court with instructions to make a finding as to respondent's fitness, or unfitness, to have the custody of the children. On the basis of this finding, the court may make such modification of the decree with reference to the custody of the children as it shall deem to best serve their welfare. For this purpose, the court may take such additional testimony as it may consider necessary to insure that the children are provided with a proper home.

In the event that the court should determine that the welfare of the children will best be served by awarding their custody to appellant, he should be relieved of his obligation to pay eighty-five dollars per month for their support.

The decree is affirmed except as to the matters specifically referred to above, and as to them the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Each party will bear his own costs on this appeal.

GRADY, C. J., MALLERY, SCHWELLENBACH, HILL, HAMLEY, FINLEY, and OLSON, JJ., concur.

WEAVER, J., did not participate.

---

November 25, 1953. Petition for rehearing denied.

[1]Reported in 262 P. (2d) 183.