[No. 30888. Department One. July 18, 1949.]

JEANETTE K. BORENBACK, *Respondent,* v. JACK BORENBACK, *Appellant.*[1]

[1] Reported in 208 P. (2d) 635.

*Frederick B. Cohen* and *John E. Bowen*, for appellant.

*R. W. Miller*, for respondent.

STEINERT, J.—This is an appeal, by the defendant in a divorce action, from an order modifying the provisions of a prior interlocutory order relative to the custody of a minor child, and, by such modification, awarding absolute custody and control of the child to the plaintiff and denying defendant the right of further visitation with the child.

Respondent, Jeanette K. Borenback, and appellant, Jack Borenback, intermarried in Bremerton, Washington, on or about August 23, 1943. One child, a daughter, was born as the issue of this marriage.

In November, 1946, respondent instituted suit for divorce against appellant, on the ground of cruel and inhuman treatment. Appellant admitted service of process in the action, but defaulted at the trial.

Upon a hearing before the court, findings of fact were made, reciting that appellant was guilty of cruel and inhuman treatment towards respondent, and that he had by various acts, deeds, and personal indignities made her home life burdensome in the extreme; that the minor child, then two years of age, was in the custody of respondent, and that respondent was a fit and proper person to have and retain the custody, care, control, and education of the child; that no community property was involved in the proceedings; and that appellant had departed from the state of Washington.

Upon these findings of fact, followed by appropriate conclusions of law, an interlocutory order was entered December 16, 1946, granting respondent a divorce, effective as of the time provided by statute, and awarding her the care, custody, control, and education of the minor child, but reserving to appellant the right of visitation with the child. Final decree of divorce, confirming the interlocutory order, was entered June 18, 1947.

Respondent did not ask in her complaint, nor did the interlocutory order make provision, for alimony or for support of respondent or the child. The reason for this was, as testified by respondent at the recent hearing for modification of the interlocutory order, that, at the time the divorce action was instituted, appellant had arranged to move to the state of New York, where he intended to live with his parents, and it was therefore agreed, by and between respondent and appellant, that, if he would go to that state and leave respondent alone, she would not ask for anything in the way of financial support.

Appellant did go to New York, but he remained there only about a month, and then returned to Bremerton. In the meantime, respondent, being without funds or property, was required to, and did, secure employment in order to support herself and the child. She continued in paid employment until the latter part of October, 1947, at which time she married one George Eckert, with whom she and her minor child have been living in or near Bremerton ever since.

Immediately upon his return from New York, in the early part of 1947, appellant began insisting upon his right of visitation with the child, who was then but a little over two years of age. Inasmuch as no set time or place for such visitations had been fixed in the interlocutory order, appellant made a practice of calling at respondent's home irregularly, at such times as he himself chose. Sometimes, also, when the child was at the home of respondent's parents, who were then living in Bremerton, appellant would call there.

In view of the strained relations that had existed between respondent and appellant prior to and at the time of obtaining the divorce, and because it had been understood and agreed between the parties that appellant was to make his permanent abode in New York and leave respondent "alone," these calls by appellant became exceedingly annoying and obnoxious to respondent. The situation became further aggravated by the fact that appellant began making and circulating derogatory statements concerning re-

spondent. As time went on, appellant's harassment of respondent took on a more pronounced form. In August, 1947, which was two or three months prior to respondent's second marriage, appellant filed a petition in the divorce cause, asking modification of the interlocutory order therein to the extent that respondent be deprived of her custodial rights with respect to the child and that appellant be granted sole custody and control. In that petition, appellant made the categorical charge that, subsequent to obtaining the divorce, respondent had taken "into her home and lived with, one George Eckert, cohabitating with said man as her husband — all in the presence of the minor child, Diana Lois Borenback."

Respondent answered appellant's petition, denying each and every allegation thereof, and, by cross-petition, asked that appellant be deprived of further right of visitation with the child.

Subsequently appellant's petition was dismissed by an order of the court which recited that

". . . the defendant [appellant] has decided to dismiss said petition for the reason that he has insufficient information and facts to substantiate the allegations set forth in his petition and that by reason thereof the said petition should be dismissed."

On January 9, 1948, after respondent had married George Eckert, mentioned above, appellant filed a motion for an order directing respondent to show cause why he should not be allowed at all reasonable times and places to see and visit with the minor child, who was then three years of age. The motion was based on appellant's affidavit to the effect that respondent and her present husband had refused him permission to see his child. Respondent filed a controverting affidavit denying that either she or her present husband had refused appellant such permission. The controverting affidavit further alleged affirmatively that appellant had pursued a studied course of conduct regarding such visitation, causing respondent considerable inconvenience and humiliation, by refusing to inform respondent as to when

his visitations were to be made and by falsely accusing her of indiscretions.

The matter came on for hearing before the court on January 19, 1948, on appellant's motion, and, after due consideration, the court entered an order granting appellant the right of visitation with the minor child for a period of two hours each week, such right to be exercised, however, at a time and place prearranged by appellant, and out of the presence of the respondent.

Unfortunately, this arrangement did not work out satisfactorily or as it was hoped it would. From the evidence, it appears that since the entry of that order appellant has been making his visitations at the home of respondent and her second husband in much the same manner as he had previously made them. The house in which respondent and her present family live is small, and appellant's presence is not only annoying to respondent and embarrassing to her present husband, but also interferes with the regular activities of the home, particularly the cooking and eating. The conditions thus created are also confusing to the child and make her dissatisfied and unhappy.

Because of this situation, respondent, on November 3, 1948, filed this latest petition, requesting the court to modify the interlocutory order by awarding to her the absolute care, custody, control, and education of the minor child and denying appellant the right of further visitation. Appellant countered with a cross-petition, asking that he be allowed the right of visitation for a period of three hours on some specified evening of each week, without prior notice to the respondent, or, in the alternative, that respondent be required to deliver the child to the home of respondent's parents on Saturday afternoon of each week, in order that appellant might visit her at that place.

The matter then came on duly and regularly for hearing in open court on the foregoing petition and cross-petition, at which time evidence was taken disclosing the facts narrated above.

Another fact, brought out in the evidence, is that, although appellant is steadily employed and earns a salary of approximately fifty dollars a week, he has never, since the time of the divorce, contributed a cent to the care or support of the child.

The record shows that the trial judge gave the matters in issue careful thought and serious attention. His chief concern, of course, was the welfare of the child. We quote that portion of his oral decision which forms the basis of the court's order of modification:

"The child has, in fact, a new father. She is a four-year-old child — just a baby. She was two years old at the time of this divorce. She didn't know who her father was — probably doesn't know, now. She is too young to understand those things. I think if I made an order permitting him to visit this child, on condition, of course, that he pay a reasonable amount, — even so, I would just be subjugating the rights of the child to the matter of dollars. I think he would enforce his right as long as he saw fit and keep the child in a turmoil. I think his good faith has not been shown. His interest or concern for the child is subordinated to his desire to annoy and disturb his former wife. Looking at it purely from the changed standpoint, I dislike to take away from the man the right to visit his child but he took it away, himself. It is true he wasn't under any legal order of the court to pay, but he was morally responsible to do something for the child, whose personal relationship he wants to retain. I think if he should retain his right to visit on the grounds he pay, it would just disturb the whole set-up. I think the welfare of the child deserves a new start."

In connection with the reasons expressed by the court for its ruling, it should be further stated that the evidence fails to show any convenient and satisfactory place where appellant could in any event have the child during the hours of visitation requested by him. According to his own testimony, he lives with two other men in an apartment. On the other hand, there is no evidence that respondent's parents would be willing to take care of the child regularly every Saturday afternoon and at the same time permit appellant to have access to their home. Moreover, it further appears from the evidence that respondent's parents do not now live

in the city of Bremerton, but are residing in Belfair, a hamlet ten or twelve miles distant from Bremerton.

■ We have consistently held and repeatedly said that, in awarding custody of children in divorce proceedings, the paramount and controlling consideration is the welfare of the child or children. *Wixson v. Wixson*, 172 Wash. 151, 19 P. (2d) 912; *Flagg v. Flagg*, 192 Wash. 679, 74 P. (2d) 189; *Lindblom v. Lindblom*, 22 Wn. (2d) 291, 155 P. (2d) 790; *Mitchell v. Mitchell*, 24 Wn. (2d) 701, 166 P. (2d) 938; *Allen v. Allen*, 28 Wn. (2d) 219, 182 P. (2d) 23; *Brookshire v. Brookshire*, 29 Wn. (2d) 783, 189 P. (2d) 636.

In some of our decisions we have declared that in such matters the welfare of the children is the only issue and the sole matter with which the court is concerned. *Brock v. Brock*, 123 Wash. 450, 212 Pac. 550; *Broesch v. Broesch*, 159 Wash. 409, 293 Pac. 464; *Warnecke v. Warnecke*, 28 Wn. (2d) 259, 182 P. (2d) 699; *Fitzgerald v. Leuthold*, 30 Wn. (2d) 402, 192 P. (2d) 371.

■ We have also repeatedly stated and held that in divorce proceedings the superior court has large power and discretion regarding the custody of minor children. *Peterson v. Peterson*, 164 Wash. 573, 3 P. (2d) 1007; *Eliason v. Eliason*, 10 Wn. (2d) 719, 118 P. (2d) 170; *Pardee v. Pardee*, 21 Wn. (2d) 25, 149 P. (2d) 522; *Aubry v. Aubry*, 26 Wn. (2d) 69, 173 P. (2d) 121.

Necessarily, in matters of this kind, each case must be judged by its own facts. *Pressey v. Pressey*, 184 Wash. 191, 50 P. (2d) 891; *Ayers v. Ayers*, 188 Wash. 540, 62 P. (2d) 1358; *Maley v. Maley*, 18 Wn. (2d) 766, 140 P. (2d) 262; *Schorno v. Schorno*, 26 Wn. (2d) 11, 172 P. (2d) 474.

■ Although the privilege of visitation enjoyed by a parent is an important one, it is not of itself an absolute right, nor is it the paramount consideration; it must always yield to what is best for the welfare of the child. *Bedolfe v. Bedolfe*, 71 Wash. 60, 127 Pac. 594; *Martin v. Martin*, 27 Wn. (2d) 308, 178 P. (2d) 284; *Lear v. Lear*, 29 Wn. (2d) 692, 189 P. (2d) 237.

In light of these rules and the evidence narrated above, we are unable to say that the trial court abused its discretion in making and entering the order of modification from which this appeal is taken. We are of the opinion, as was the trial judge, that the welfare of the child, which is the paramount and controlling consideration, requires that, under the circumstances and situation here shown to exist, appellant's right of visitation be terminated.

Cases of this kind always have a tragic side, and this case is no exception. However, the tragedy takes its course not from the decision which the court may make upon the facts presented to it, but from the unfortunate family conditions which precede and compel such decision.

The order of the trial court will be affirmed.

JEFFERS, C. J., BEALS, MALLERY, and HILL, JJ., concur.

[1]Reported in 208 P. (2d) 641.