GORDON McCLOUD, J. (concurring in part and dissenting in part)
¶ 60 I agree with the lead opinion that both RCW 13.34.700(7)(a) and the due process clause of the Washington Constitution provide a child with the right to counsel in dependency proceedings in certain circumstances. WASH. CONST. art. I, § 3. I write separately for two reasons: (1) to highlight the fact that all members of this court now agree that a trial court must consider certain key factors before making that decision about appointment of counsel, see lead opinion at 596-97; dissent at 607, and (2) to dissent from the decision to seal the records of all dependency cases from public view, even on appeal.
¶ 61 With regard to the first issue-the child's right to appointment of counsel during a dependency proceeding-the lead opinion and the dissent agree on one key point. They agree that before making a decision on whether to appoint counsel, the trial court must consider "[whether the] child disputes the facts that form a basis for a dependency, [whether the] child presents a complex or sophisticated argument against the State's proposed decision," and whether "a child old enough to voice a preference" about the dependency voices a position different from the position advanced by the guardian ad litem. Lead opinion at 594-95; see also dissent at 598. Full consideration of these and any other factors raised by the parties when considering whether to appoint counsel for the child should go a long way towards addressing the problems detailed in the dissent. Dissent at 609.
¶ 62 However, I disagree with the lead opinion's resolution of the parties' joint motion to seal the record in this court. The lead opinion holds that State v. S.J.C., 183 Wash.2d 408, 352 P.3d 749 (2015), and GR 15(g) authorize the appellate courts to seal the complete record in all dependency proceedings-regardless of anything in article I, section 10 of the Washington Constitution to the contrary. Lead opinion at 598. However, article I, section 10 does indeed say something to the contrary: it provides that "[j]ustice in all cases shall be administered openly." WASH. CONST. art. I, § 10. It does not have an exemption for cases involving juveniles (or adults) in dependency proceedings.
¶ 63 The lead and dissenting opinions reason that S.J.C. already held that article I, section 10-despite its clear and categorical ("all cases") language-does not apply to the dependency proceedings at issue in this case.
¶ 64 I respectfully disagree. S.J.C. addressed one issue, and it concerned the sealing of dispositions in juvenile criminal *600 cases-not dependency cases. As the introduction to the opinion in that case clearly stated, the question before the court was "whether article I, section 10 of the Washington Constitution requires the court to apply the Ishikawa[1 ] factors when a former juvenile offender has satisfied the statutory requirements of former RCW 13.50.050 (2011) to seal his or her juvenile court record." S.J.C., 183 Wash.2d at 411, 352 P.3d 749 (footnote omitted).
¶ 65 To be sure, I disagreed with the decision in that case to exempt juvenile criminal proceedings from that constitutional protection. S.J.C., 183 Wash.2d at 435, 352 P.3d 749 (Stephens, J., dissenting). But I do not rest my assessment of the parties' motion to seal the record in this case on a prior dissent. Instead, I rest it on the fact that the question presented here is different from the question presented there-this case involves the record of a dependency proceeding. S.J.C. involved the record of a criminal disposition held in juvenile court specifically to avoid the stigma, formalities, and nonrehabilitative adverse consequences of an adult criminal conviction, and it based its decision on our state's historical treatment of such juvenile criminal dispositions. S.J.C ., 183 Wash.2d at 418-19, 352 P.3d 749.
¶ 66 For that reason, I would deny the parties' agreed motion to discard the constitutional protection that "justice shall be administered openly" in all courts of our state. I fear that we are carving out courts to shield from public view one by one-first, juvenile courts, S.J.C., 183 Wash.2d at 435, 352 P.3d 749 (Stephens, J., dissenting); next, certain therapeutic courts, State v. Sykes, 182 Wash.2d 168, 339 P.3d 972 (2014) ; and now, dependency proceedings.
¶ 67 While I concur in the lead opinion's holding on the due process question presented by this case, I respectfully dissent from its conclusion that dependency proceedings can now join the growing list of cases that are exempt from the benefits that the constitutional guaranty of open courtrooms, open court files, and open government was supposed to bring to the people.
YU, J. (dissenting in part)
¶ 68 Our jurisprudence has evolved in its understanding that children have cognizable rights and protected interests. We have correspondingly grown in our recognition that children's rights and interests are entitled to legal protection. Therefore, "the law has constructed a constitutional wall around juveniles, maintaining its integrity through a continuous process of refining its contours and repairing its cracks." State v. S.J.C., 183 Wash.2d 408, 413, 352 P.3d 749 (2015). Today, the lead opinion abruptly reverses course, rejecting the progress we have made and reverting to the view that children in dependency cases are commodities to be allocated, not individuals to be heard. I cannot join the lead opinion's retreat to a perspective that treats children as mere "chattels incident to adult domestic relations." Id.
¶ 69 The dependency case involving S.K.-P. has been dismissed. In re Dependency of S.K.-P., 200 Wash. App. 86, 92, 401 P.3d 442, review granted, 189 Wash.2d 1030, 408 P.3d 1094 (2017). Therefore, reversing the ruling denying appointed counsel in E.H.'s case on a narrow, case-by-case basis would be sufficient to resolve the pending issues presented. Further, I agree that the joint motion to seal should be granted. I thus respectfully dissent in part.
¶ 70 However, I must register my deep concern at the lead opinion's conclusion that article I, section 3 has no independent meaning in this context and, therefore, provides no protections beyond the minimum required by the Fourteenth Amendment. WASH. CONST. art. I, § 3 ; U.S. CONST. amend XIV. It is clear from our cases and statutes that all children in dependency cases are continuously at risk of being erroneously deprived of their most fundamental rights. It has also been repeatedly shown that an attorney representing the child's position dramatically decreases that risk. It is apparent, however, that our current discretionary approach to appointing counsel for children in dependency cases has failed to protect children's state due process rights.
*601 ANALYSIS
A. The discretionary, case-by-case approach to appointing counsel for children in dependency cases violates the Washington Constitution
¶ 71 All children in dependency cases unquestionably have significant, substantive rights pursuant to Washington law, including the right to state their positions and to have those positions represented in court. RCW 13.34.090(1). As clearly recognized by our legislature's provision that an attorney may be appointed to represent the child's position, we cannot assume the child's interests will be aligned with the State's in any case. RCW 13.34.100(7)(a). However, the unguided discretion that trial courts currently have in appointing counsel allows for inconsistent practices that leave many children with no voice and no one to advocate for their rights. This arrangement does not satisfy the heightened due process protections provided in this context by article I, section 3.
1. Article I, section 3 is more protective of a child's right to appointed counsel in dependency cases than the Fourteenth Amendment is
¶ 72 "In determining the meaning of a state constitutional provision, 'the focus is on whether the unique characteristics of the state constitutional provision and its prior interpretations actually compel a particular result.' " State v. Pugh, 167 Wash.2d 825, 835, 225 P.3d 892 (2009) (internal quotation marks omitted) (quoting State v. Chenoweth, 160 Wash.2d 454, 463, 158 P.3d 595 (2007) ). Therefore, "context matters when we are determining whether to independently analyze the state due process clause." Bellevue Sch. Dist. v. E.S., 171 Wash.2d 695, 711, 257 P.3d 570 (2011). The specific context presented here is a child's right to representation in a dependency case. In this context, the Gunwall[1] factors and recent precedent lead me to conclude that article I, section 3 is more protective than the Fourteenth Amendment.
a. The Gunwall factors are evenly split because preexisting state law supports an independent interpretation
¶ 73 I agree that the first three Gunwall factors do not support an independent interpretation of article I, section 3, while the fifth and sixth factors do. Lead opinion at 592-93. However, I would hold that the fourth factor (preexisting state law) does support an independent interpretation, leaving the nonexclusive Gunwall factors evenly split.
¶ 74 In evaluating preexisting state law, we must "consider the degree of protection that Washington State has historically given in similar situations." Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wash.2d 791, 809, 83 P.3d 419 (2004). The question is not whether Washington has historically accorded children extensive due process rights generally. It is whether Washington law has been more protective than federal law in the context presented. Historical statutory and common law demonstrate a long-standing commitment in Washington State to providing representation for children in dependency cases and similar contexts. Such a commitment is noticeably and unsurprisingly lacking in historical federal law because, as the Supreme Court of the United States has noted, any question about familial relationships " 'belongs to the laws of the States and not to the laws of the United States.' " Rose v. Rose, 481 U.S. 619, 625, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987) (quoting In re Burrus, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890) ).
¶ 75 It is true that historically, Washington has required that children who are parties in a court case must appear by guardian. Lead opinion at 592-93. However, it is not true that this long-standing requirement "cuts against any finding that the state due process clause expands protections for the appointment of attorneys for children, as historically children have not had the right to appear in court at all, let alone with counsel." Id. Gunwall is a threshold inquiry. Therefore, the fourth Gunwall factor asks whether state law has historically been more protective than the federal constitution, not whether historical state law already recognizes the *602 particular right at issue. Gunwall, 106 Wash.2d at 61-62, 720 P.2d 808. A provision that a child shall appear through a representative is unquestionably more protective of a child's right to representation than no provision at all.
¶ 76 Washington's historical practice of having children appear through a guardian reflects Washington's overall historical protections, "particularly in disputes touching on the rights and protection of minors." In re Parentage of L.B., 155 Wash.2d 679, 696-97, 122 P.3d 161 (2005) (citing Borenback v. Borenback, 34 Wash.2d 172, 208 P.2d 635 (1949) (citing Allen v. Allen, 28 Wash.2d 219, 182 P.2d 23 (1947) ; Mitchell v. Mitchell, 24 Wash.2d 701, 166 P.2d 938 (1946) ; Lindblom v. Lindblom, 22 Wash.2d 291, 155 P.2d 790 (1945) ; Flagg v. Flagg, 192 Wash. 679, 74 P.2d 189 (1937) ; Wixson v. Wixson, 172 Wash. 151, 19 P.2d 912 (1933) ) ). These protections "extend[ ] considerably greater protections to our citizens in this regard than do comparable federal statutes and rulings thereon." Gunwall, 106 Wash.2d at 66, 720 P.2d 808. Most notably, for federal purposes, "[n]early everyone would identify 1967 as the most important year in the history of counsel for children in the United States." Martin Guggenheim, Reconsidering the Need for Counsel for Children in Custody, Visitation and Child Protection Proceedings, 29 LOY. U. CHI. L.J. 299, 301 (1998). By that time, "[m]ost of the practices prescribed by the Supreme Court were already in place in Washington." S.J.C., 183 Wash.2d at 424, 352 P.3d 749.
¶ 77 Preexisting state law thus shows Washington has historically granted more procedural protections for children's representation in court than federal law has done. The fourth Gunwall factor supports an independent interpretation, leaving the Gunwall factors evenly split.
b. Recent court and legislative decisions confirm that article I, section 3 should be interpreted independently in this context
¶ 78 Because the six Gunwall factors are explicitly nonexclusive, we should resolve the split by looking to recent decisions by this court and the legislature. "[T]his court has been zealous in its protection of familial relationships," and the legislature has consistently and repeatedly built on earlier law to increase procedural protections for children's representation in family law cases. In re Dependency of M.S.R., 174 Wash.2d 1, 15-16, 271 P.3d 234 (2012). The substance and direction of this recent law show that article I, section 3 of the Washington Constitution provides more protection than the Fourteenth Amendment in this context.
¶ 79 Over 30 years ago, this court recognized in an action to determine parentage that "[a] child must not be a party in name only. It is fundamental that parties whose interests are at stake must have an opportunity to be heard 'at a meaningful time and in a meaningful manner.' " State v. Santos, 104 Wash.2d 142, 147, 702 P.2d 1179 (1985) (quoting Olympic Forest Prods., Inc. v. Chaussee Corp., 82 Wash.2d 418, 422, 511 P.2d 1002 (1973) ). A few years later, we reemphasized that "children involved in dependency and termination actions are parties to those actions and entitled to representation. Children have a right to be represented by a guardian ad litem or an attorney or both, who have the right to fully participate in all proceedings." In re Dependency of J.H., 117 Wash.2d 460, 477, 815 P.2d 1380 (1991) (emphasis added) (footnotes omitted).[2] And in 2005, we strongly urged trial courts "to consider the interests of children in dependency, parentage, visitation, custody, and support proceedings, and whether appointing counsel, in addition to and separate from the appointment of a [guardian ad litem], to act on their behalf and represent their interests would be appropriate *603 and in the interests of justice." L.B., 155 Wash.2d at 712 n.29, 122 P.3d 161 (emphasis added). Relevant recent precedent thus recognizes significant, consistently growing procedural protections for children's representation in dependency and similar family law cases.
¶ 80 Additionally, the legislature has taken important steps to provide for appointed counsel for children in dependency and termination cases that exceed federal statutory protections. Within the past 10 years, the legislature has enacted statutes that (1) require the State and the guardian ad litem (GAL) or court appointed special advocate (CASA) to notify all children who are at least 12 years old that they have a right to request counsel, (2) require appointment of counsel for children six months after all parental rights have been terminated, and (3) permit judges to appoint counsel for children in all dependency proceedings on a case-by-case basis. LAWS OF 2010, ch. 180, § 2; LAWS OF 2014, ch. 108, § 2. By comparison, Congress has enacted only "a limited statutory right of representation (though not necessarily by attorney) ... as a condition for receiving federal funds." M.S.R., 174 Wash.2d at 14 n.7, 271 P.3d 234 (citing 42 U.S.C. §§ 5101 - 5107 ).
¶ 81 The lead opinion renders these legislative efforts largely meaningless by holding that a child's statutory right to counsel in a dependency case is coextensive with the right to counsel that a child already has pursuant to the federal due process clause. Lead opinion at 596-97. In addition, the recent cases the lead opinion points to are of little to no relevance in this context. Id. at 592 (citing E.S., 171 Wash.2d 695, 257 P.3d 570 ; In re Welfare of A.W., 182 Wash.2d 689, 344 P.3d 1186 (2015) ; M.S.R., 174 Wash.2d 1, 271 P.3d 234 ).
¶ 82 E.S. considered a child's right to appointed counsel only "in the context of an initial truancy proceeding," explicitly stated that the "right to counsel in a context entirely outside the scope of truancy is not instructive," and specifically declined to give weight to cases concerning the right to counsel in dependency cases. 171 Wash.2d at 711-13, 257 P.3d 570. Moreover, the court declined to find a right to appointed counsel in E.S. because the petitioner "failed to show any private interest that was affected by the initial truancy hearing." Id. at 708, 257 P.3d 570 (emphasis added). The same cannot possibly be said of any hearing in a dependency case.
¶ 83 A.W. did consider a similar type of case, but an entirely different aspect of due process. It did not consider appointment of counsel for anyone, much less for children. A.W. considered only the applicable burden of proof in a dependency guardianship. 182 Wash.2d at 703, 344 P.3d 1186. Further, it expressly did not consider the child's rights as independent of the parent's rights because "[t]he State must assume that the interests of the parent and the child converge until the State proves by the requisite standard that there is parental unfitness," which of course cannot happen until the requisite standard is defined. Id. at 707 n.16, 344 P.3d 1186. A.W. is therefore not instructive on the issue presented.
¶ 84 Finally, the outcome of M.S.R. is entirely irrelevant to determining whether the state constitution is more protective than the federal. M.S.R. explicitly did not reach any state constitution claims because they were inadequately briefed. 174 Wash.2d at 20 n. 11, 271 P.3d 234. We have the authority to request additional briefing, but this court's declining to reach inadequately briefed issues is not proof that we are unconcerned with the merits. Contra lead opinion at 592. Treating it as such inappropriately disregards the basic structure of appellate proceedings in which the parties have both the right and the duty to brief the issues as they see fit. It also sets dangerous precedent, inviting parties to assume we have implicitly decided issues that our published opinions explicitly declined to address.
¶ 85 Therefore, while the nonexclusive Gunwall factors are evenly split, recent cases and statutes conclusively show that article I, section 3 is more protective than the Fourteenth Amendment of a child's right to representation in a dependency case. And because I would analyze Washington's due process clause independently in this context, the assertion that for federal due process purposes, a child in a dependency case is *604 similarly situated to an adult in a probation revocation hearing is irrelevant. See lead opinion at 593-95 (discussing Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ). I simply note that such a comparison is entirely inappropriate as a matter of fact, and as a matter of law, it is contrary to our precedent's explicit guidance that "context matters." E.S., 171 Wash.2d at 711, 257 P.3d 570.
2. Article I, section 3 requires consistent practices for appointing counsel to represent children in dependency cases
¶ 86 I agree that for both state and federal purposes, a procedural due process analysis requires consideration of the private and government interests at stake, the risk of erroneous deprivation, and the value of additional procedural safeguards. Lead opinion at 595. However, the lead opinion (despite its insistence that the federal constitution controls) purports to conduct an independent state analysis without accounting for relevant features of state law. Id. at 595-97. "When a state court neglects its duty to evaluate and apply its state constitution, it deprives the people of their 'double security.' " Alderwood Assocs. v. Wash. Envtl. Council, 96 Wash.2d 230, 238, 635 P.2d 108 (1981) (quoting THE FEDERALIST No. 51, at 339 (A. Hamilton or J. Madison) (Modem Library ed., 1937) ). The lead opinion effects just such a deprivation here.
¶ 87 I would hold that in light of the interests and rights at stake in dependency proceedings specifically as a matter of state (as opposed to federal) law, it is clear that the current, case-by-case approach to appointing counsel does not satisfy article I, section 3.
¶ 88 Every dependency case implicates the protected interests and statutory rights of every child involved. M.S.R., 174 Wash.2d at 17-18, 271 P.3d 234. And in every dependency case, the child faces at least some risk that he or she will be erroneously deprived of his or her rights. Without any statutory guidance as to when counsel should be appointed to protect the child's rights, though, each child is subject to the policies and viewpoint of the particular court presiding over the case, limited only by the minimum requirements of constitutional due process. This system does not sufficiently protect the significant substantive rights at stake for children in dependency proceedings.
a. All children have protected interests and statutory rights at stake in dependency cases
¶ 89 Every child in a dependency case has the same interests and faces the same risks at various points in the proceedings. The most obvious protected interest at risk is the child's interest in maintaining continuous relationships with his or her family. "In a dependency or termination proceeding ... the child is at risk of not only losing a parent but also relationships with sibling(s), grandparents, aunts, uncles, and other extended family." Id. at 15, 271 P.3d 234. This risk is far more important than the lead opinion today realizes. See lead opinion at 597.
[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoti[ng] a way of life through the instruction of children as well as from the fact of blood relationship.
Once we recognize that the child's interest in his or her familial bonds is constitutionally protected, and that familial bonds stem not just from biology, but also from the intimacies of daily association, then it logically follows that a child has a constitutionally protected interest in whatever relationships comprise his or her family unit.
In re Custody of Shields , 157 Wash.2d 126, 152, 136 P.3d 117 (2006) (Bridge, J., concurring) (alterations in original) (citations and quotation marks omitted) (quoting Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 844, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) ). Therefore, "maintaining the integrity of the family relationships, including the child's parents, siblings, and other familiar relationships" is a protected liberty interest that every child has and that every child risks losing in a dependency case. M.S.R., 174 Wash.2d at 20, 271 P.3d 234.
*605 ¶ 90 However, damage to family relationships is only one of the many risks children in dependency cases face. Unlike a parent, a child in a dependency case may be "physically removed from the parent's home." Id. at 16, 271 P.3d 234. Regardless of whether the child is placed with relatives or in the care of the State, removal has enormous consequences for every aspect of the child's life. "Children who are removed from their parents' care face a loss of physical liberty and may be forced to change homes, schools, and care facilities. Such movement may cause children significant harm." In re Dependency of Lee, 200 Wash. App. 414, 450, 404 P.3d 575 (2017), review denied, 190 Wash.2d 1006, 415 P.3d 99 (2018).
¶ 91 Where a child in a dependency case is in the care of his or her parents or other relatives, the child has the right to a safe, secure, and appropriate placement to protect his or her physical liberty and bodily integrity. M.S.R., 174 Wash.2d at 16-17, 271 P.3d 234. But where a child is removed from his or her parents' care and cannot be placed with a relative or someone else the child knows, the child must "face the daunting challenge of having his or her person put in the custody of the State as a foster child, powerless and voiceless, to be forced to move from one foster home to another." Id. at 16, 271 P.3d 234. All children in foster care have "substantive due process rights that the State, in its exercise of executive authority, is bound to respect," particularly the "right to be free from unreasonable risk of harm, including a risk flowing from the lack of basic services, and a right to reasonable safety." Braam v. State, 150 Wash.2d 689, 698-99, 81 P.3d 851 (2003).
¶ 92 In addition to these constitutionally protected interests, every child has the statutory right "to be heard in his or her own behalf." RCW 13.34.090(1). This right is not merely my view of the best policy or a nicety that may be offered to "increase the children's comfort and agency in the courtroom." Lead opinion at 596. It is the legislature's declaration, consistent with this court's decisions, that a child in a dependency case has the "right to fully participate in all proceedings." J.H., 117 Wash.2d at 477, 815 P.2d 1380 (citing RCW 13.34.090, .100; JuCR 9.2(b)(1) ). This is crucial because "[w]hen adjudicating the 'best interests of the child,' we must in fact remain centrally focused on those whose interests with which we are concerned, recognizing that not only are they often the most vulnerable, but also powerless and voiceless." L.B., 155 Wash.2d at 713 n.29, 122 P.3d 161.
¶ 93 Thus, every dependency case implicates fundamental rights that every child has in accordance with Washington law. As discussed further below, all children who are not represented by attorneys are placed at an unacceptably high risk of being erroneously deprived of their rights in a dependency case. Despite these common interests and risks, however, the current, unguided, discretionary system for appointing counsel ensures that whether a child will have an attorney varies depending on which court is considering his or her case.
b. The risk that a child without an attorney will be erroneously deprived of protected interests and rights is unacceptably high, and the current discretionary system does not mitigate that risk
¶ 94 "While an adult may have an understanding of substantive and procedural issues, and court process, children are at great risk of misunderstanding both." Amy E. Halbrook, Custody: Kids, Counsel and the Constitution, 12 DUKE J. CONST. L. & PUB. POL'Y 179, 212 (2016). Such misunderstandings create an extremely high risk that unrepresented children in dependency cases will be deprived of their protected interests and statutory rights, with potentially devastating consequences.
¶ 95 The State places great emphasis on the procedural protections already in place for children, including their right to an appointed GAL or CASA and the possibility of counsel being appointed on a discretionary, case-by-case basis. However, an appointed GAL or CASA does not play the same role as an attorney representing the child's position and does not mitigate the risk of erroneous deprivation as an attorney does. Moreover, the current discretionary system for appointed counsel is not sufficient to ensure that *606 counsel will be appointed in all (or even most) cases where it is necessary to protect the child's rights.
¶ 96 It has been empirically shown that children who are not represented by attorneys are routinely erroneously deprived of their most fundamental protected interests and statutory rights, even when they have an appointed GAL or CASA. For instance,
youth who were appointed an attorney at the first dependency hearing were 20 percent more likely to reside with known persons instead of foster parents than those children appointed attorneys sometime after the initial shelter care hearing (and 27 percent more than those children without an attorney until after termination of parental rights).
Amicus Curiae Br. of Legal Counsel for Youth & Children at 13. All children have the right to be placed with people they know instead of the foster care system where possible. RCW 13.34.130(5). But whether that right is actually protected varies, depending on whether the child has an attorney.
¶ 97 In addition, a child might not know that he or she had the right to " 'speak up if he didn't feel good in a placement.' " Amici Curiae Br. of Ctr. for Children & Youth Justice & Mockingbird Soc'y (CCYJ) at 5 (quoting ALICIA LEVEZU , CHILDREN & YOUTH ADVOCACY CLINIC AT UNIV. OF WASH., DEFENDING OUR CHILDREN : A CHILD'S ACCESS TO JUSTICE IN WASHINGTON STATE 5 (Aug. 2016) (Defending Our Children ), http://cdcasa.org/wp-content/uploads/2017/01/UW-Study-2016-Defending-Our-Children.pdf [https://perma.cc/5KUG-Z8L6] ). If the child is being abused or neglected in that placement, he or she may become trapped in an even more perilous situation than the one that existed before the dependency case began. It is unlikely that a child who has been placed in an abusive situation by the State will know that he or she has a right to be heard unless that right is explained to the child by an attorney. Even a child who does know his or her rights, however, will likely "stop[ ] seeing the value in expressing his opinion and [begin] to feel lost in the system" after being subjected to inappropriate placements or frequent moves without anyone to advocate for the child's position. Id. at 10.
¶ 98 The fact that children who have a GAL or CASA but no attorney are more likely to be erroneously deprived of their rights is not surprising because "GALs and CASAs are not trained to, nor is it their role to, protect the legal rights of the child." M.S.R., 174 Wash.2d at 21, 271 P.3d 234. Instead, their statutorily mandated role is "[t]o represent and be an advocate for the best interests of the child." RCW 13.34.105(1)(f). In some cases, the child's stated position might align with the State's view of the child's best interests, but in many cases, their positions will diverge. "[C]ourtroom observers recently found that CASA[ ]s and GAL[ ]s 'only presented arguments to support the child's position 30 [percent] of the time.' " Amici Curiae Br. of CCYJ at 13 (quoting Defending Our Children at 22). This is a disturbingly low figure and may still underestimate how often the child's position goes unrepresented because without an attorney to act as the child's confidential counselor, it can be more difficult to ascertain what the child's position actually is.
¶ 99 "Unlike GALs or CASAs, lawyers maintain confidential communications, which are privileged in court." M.S.R., 171 Wash.2d at 21, 271 P.3d 234. An attorney can therefore encourage a child to freely express what he or she thinks and wants, and can honestly promise not to divulge information the child wants to keep private. GALs and CASAs cannot because they are required to "report to the court any views or positions expressed by the child on issues pending before the court." RCW 13.34.105(1)(b).
¶ 100 In addition to making it more difficult for a child to communicate honestly, the GAL's or CASA's mandatory reporting duty might be mistakenly viewed as giving the child a sufficient voice in the proceedings. E.g., S.K.-P., 200 Wash. App. at 110, 401 P.3d 442 ; State Dep't of Soc. & Health Servs. Suppl. Br. at 14. A GAL or CASA is charged with reporting the child's position, not representing it. These are two different functions, clearly reflected by the fact that the legislature provides for both discretionary appointment of counsel to "represent" the child's *607 position and mandatory appointment of a CASA or GAL to "report" it. RCW 13.34.100(7)(a), .105(1)(b).
¶ 101 An appointed GAL or CASA is not a confidential counsel or advocate. An appointed attorney is. When children have attorneys, the risk that they will be erroneously deprived of their protected interests and statutory rights drops dramatically.
¶ 102 Because all children have fundamental, substantive interests and rights in their dependency cases, one might reasonably assume that all similarly situated children will receive appointed counsel on the same basis so their voices can be heard and their legal rights can be protected. One might also reasonably assume that a court's discretionary decision whether to appoint counsel would necessarily involve careful consideration of case-specific factors, including the child's age and mental capacity, the child's ability to express his or her preferences, whether the child's expressed preferences differ from the GAL's or CASA's assessment of the child's best interests, whether the child's position is being adequately represented in the proceedings, and the complexity of the underlying facts or legal issues.
¶ 103 Unfortunately, such reasonable assumptions would be misplaced. The discretionary and unguided nature of our current statute has resulted in inconsistent practices, such that " '[w]hether or not a child is represented by an attorney in a dependency proceeding depends largely on local practices in the county where the child's case is heard.' " Amicus Curiae Br. of Legal Counsel for Youth & Children at 17 (quoting OFFICE OF FAMILY & CHILDREN'S OMBUDS , 2013 ANNUAL REPORT 55 (Jan. 2014), http://ofco.wa.gov/wp-content/uploads/ofco_2013_annual.pdf [https://perma.cc/GN75-UNBZ] ). "In fact, across Snohomish, King and Pierce counties, the discretionary appointment of counsel at hearings occurred for less than 1 [percent ] of all children without advocates." Amici Curiae Br. of CCYJ at 15 (emphasis added) (citing Defending Our Children at 28). This circumstance is both unethical and unconstitutional.
¶ 104 As reflected by the plain language of RCW 13.34.100(7)(a), the legislature's intent was to ensure that counsel would be appointed where needed to represent the child's position. The legislature has also attempted to increase the likelihood of appointed counsel by requiring the State and the GAL or CASA to notify all children who are at least 12 years old that they have a right to request counsel. RCW 13.34.100(7)(c). However, Washington courts have not consistently honored the legislature's intent. In practice, courts may deny counsel on the basis that there are no "extreme circumstances" or "simply conclude[ ] that the parents themselves were sufficient to perform the services of independent counsel." Clerk's Papers at 329; Lee, 200 Wash. App. at 450, 404 P.3d 575. Children deserve more careful consideration of their protected rights, and they are entitled to it in accordance with article I, section 3 of the Washington Constitution.
c. No countervailing government interests justify the risks that unrepresented children face in dependency cases
¶ 105 In every dependency and termination case, "the State has a compelling interest in both the welfare of the child and in 'an accurate and just decision.' " M.S.R., 174 Wash.2d at 18, 271 P.3d 234 (quoting Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) ). However, these interests would be furthered, not hindered, by appointing counsel for children in dependency cases.
¶ 106 Trial courts cannot ascertain what is in the child's best interests by simply deferring to a CASA's or GAL's position. Courts must instead consider the positions of all the parties and reach their own conclusions. They cannot do so if the child's position is not represented. Therefore, the State's most compelling interests support the same result as the private interests at stake for the child: appoint counsel to represent the child's position. The only countervailing interest the State has is saving money, but "[f]inancial cost alone is not a controlling weight," particularly when the private interests at stake are as fundamentally important as a child's interests in a dependency case are. Mathews v. Eldridge, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
*608 ¶ 107 Considering the interests at stake and the high risk of erroneous deprivation under the current system, it is apparent that the Washington Constitution demands what the majority of states already provide: every child in a dependency or termination case who cannot afford a private attorney is presumptively entitled to appointed counsel. CHILDREN'S ADVOCACY INST. & FIRST STAR, A CHILD'S RIGHT TO COUNSEL : A NATIONAL REPORT CARD ON LEGAL REPRESENTATION FOR ABUSED & NEGLECTED CHILDREN 10 (3d ed. 2012) [https://perma.ccAf6BD-DDVA]; Am. Amicus Curiae Br. of Children's Rights, Inc., et al. at 19.
¶ 108 The lead opinion is wrong to conclude otherwise.
B. E.H. is entitled to appointed counsel pursuant to the Fourteenth Amendment
¶ 109 In addition to my strong disagreement with the lead opinion's analysis of article I, section 3, I would hold that E.H. is entitled to appointed counsel on a case-by-case basis even under the minimal protections of the federal constitution. I would therefore reverse and remand for counsel to be appointed for E.H.
¶ 110 The Fourteenth Amendment does not categorically require appointment of counsel for all children in dependency cases. M.S.R., 174 Wash.2d at 22, 271 P.3d 234. However, children do have the right to a thoughtful analysis of their "individual and likely unique circumstances" when courts are deciding whether to appoint counsel on a case-by-case basis. Id. This analysis requires courts to consider carefully the specific context of the individual case to determine whether " 'the particular situation demands' " appointment of counsel. Mathews, 424 U.S. at 334, 96 S.Ct. 893 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ). E.H.'s particular situation demands that an attorney be appointed to represent him and to advocate for his position.
1. A case-by-case analysis must account for the particular interests that are currently at risk of erroneous deprivation
¶ 111 The trial court correctly recognized that E.H. could be appointed counsel on a case-by-case basis and that he had a "significant private interest" at stake. Pet'r's Suppl. Br., Corrected J.A. at 9. However, it is not sufficient in a case-by-case analysis to recite the interests that are generally at stake for any child at some point in a dependency case. If the case-by-case analysis is to be meaningful, it must account for the specific circumstances and the particular child at the time the motion for appointed counsel is made. M.S.R., 174 Wash.2d at 22 n. 13, 271 P.3d 234.
¶ 112 The court here, however, noted only the generally applicable risks that every child faces at some point in a dependency proceeding, including "removal from home, the possibility of repeated placements in foster care and the dangers of being returned to an unsafe home with biological parents who are not truly ready to assume care of the child." Pet'r's Suppl. Br., Corrected J.A. at 9. At the time, those were not the interests currently at risk for E.H.
¶ 113 He had already been removed from his home, not by the State but by his mother because she needed to make arrangements for him and his siblings while she was incarcerated. The dependency petition was filed only after E.H. was abused and neglected by the family friends entrusted with his care. Although it took about eight months to find a suitable foster home for E.H., he had been living with his foster parents since January 2015, nearly two years before the motion to appoint counsel was considered. He remains there today, and the record reveals no concerns about the stability or safety of his current placement. And being returned prematurely to his mother's home (which the record does not indicate was unsafe in the first place) was not an available option at the time due to her incarceration.
¶ 114 Thus, the generalized interests recited by the trial court do not accurately reflect the individualized interests actually at risk for E.H. when his mother moved to appoint counsel for him. It is therefore not surprising that the court saw "no benefit to [E.H.] in appointing counsel at this juncture."
*609 Id. at 10. At that time, there was no risk that E.H. would be erroneously deprived of the interests that the court recognized. And contrary to the lead opinion's view, the fact that the motion to appoint counsel was initially heard by a commissioner at a review hearing where visitation was also at issue does not mean that visitation was the only interest at risk for E.H.[3] Lead opinion at 597-98. E.H.'s mother did not move to appoint counsel for that specific review hearing; she moved to appoint counsel for E.H. in all of the proceedings going forward.
¶ 115 In fact, there was an intolerably high risk that E.H. would be erroneously deprived of important protected interests when his mother moved to appoint counsel for him. E.H., like every child in Washington, has a protected statutory right "to be heard in his or her own behalf" and a protected liberty interest in maintaining relationships with his family. RCW 13.34.090(1) ; M.S.R., 174 Wash.2d at 15-16, 271 P.3d 234. E.H. has already been erroneously deprived of the former, and the latter was, and still is, at risk of erroneous deprivation, a risk that continues to increase over time.
2. E.H. has been erroneously deprived of his right to be heard
¶ 116 As discussed above, E.H. has the right to be heard in his own behalf. RCW 13.34.090(1). This unambiguous statutory right gives rise to a protected liberty interest, and under the particular circumstances presented, E.H. has been erroneously deprived of it. At the time of the motion for appointed counsel, the risk of erroneous deprivation was very high because E.H.'s position was (and remains) directly at odds with the position of his CASA and the State: E.H. wants to reunite with his mother, while the CASA and the State argue that termination of parental rights is in his best interests. When the court denied appointed counsel, that high risk became a certainty, and E.H. was erroneously deprived of his right to be heard.
¶ 117 Although E.H. cannot reunite with his mother right now, she is scheduled to be released in July 2019, when E.H. will still have almost half of his childhood ahead of him. In the meantime, he is in a stable placement with foster parents who are willing to serve as long-term guardians for him. He has maintained a close relationship with his mother, and she has made every possible effort to remain an important part of his life. The CASA acknowledges long-term guardianship would be a means of accomplishing E.H.'s goal of reunification but still advocates for termination. An attorney who is not advocating for termination might be able to come up with other solutions as well.
¶ 118 "The paramount goal of child welfare legislation is to reunite the child with the legal parents if reasonably possible." In re Parental Rights to K.J.B., 187 Wash.2d 592, 597, 387 P.3d 1072 (2017). This paramount goal remains in place, even where the parent is incarcerated. Id. at 598-99, 387 P.3d 1072. E.H. thus has a clearly stated position favoring reunification, and there is no apparent reason why that outcome is not a reasonable possibility in accordance with the law of this state.
¶ 119 The trial court noted that the CASA, though "somewhat leery," reported E.H.'s stated position to the court in accordance with her statutory duty. Pet'r's Suppl. Br., Corrected J.A. at 10; see RCW 13.34.105(1)(b). However, the position of the State and the CASA, that termination is in E.H.'s best interests, directly conflicts with E.H.'s stated desire to reunite with his family.
¶ 120 The CASA is required to represent and advocate for termination in order to comply with her statutory duties, but termination and reunification are mutually exclusive outcomes. RCW 13.34.105(1)(f). No one could possibly advocate for both at the same time. The CASA's assessment of E.H.'s best interests therefore make it impossible for her to represent his position. As discussed above, *610 reporting a child's position while strongly advocating against it does nothing to protect a child's right to be heard. And in E.H.'s case, the CASA has an attorney to represent and advocate for her position. E.H., who has far more at stake in this case than the CASA ever will, does not.
¶ 121 Once E.H. and the CASA diverged on their respective positions, there was no way for E.H. to exercise his right to be heard in his own behalf without appointed counsel. The trial court's ruling denying appointed counsel was therefore an erroneous deprivation of that right. I would reverse.
¶ 122 The lead opinion appears to agree, noting that "when a child old enough to voice a preference is rendered voiceless in the proceedings because [his or her] stated wishes are misaligned with [the CASA's] assessment of [the child's] best interests, appointment of counsel is likely proper." Lead opinion at 594. That is precisely E.H.'s situation. I therefore do not understand how the lead opinion can affirm the ruling denying counsel for him on a case-by-case basis. Id. at 597-98.
3. Without counsel, E.H. faces an unacceptably high risk of being erroneously deprived of his family relationships
¶ 123 E.H. also has a protected liberty interest in maintaining his relationships with his family. M.S.R., 174 Wash.2d at 15-16, 271 P.3d 234 ; RCW 13.34.020. This includes visitation with his siblings as well as his mother because "familial bonds stem not just from biology, but also from the intimacies of daily association." Shields, 157 Wash.2d at 152, 136 P.3d 117 (Bridge, J., concurring). At the time the trial court denied appointed counsel, E.H. faced a high risk of being erroneously deprived of his protected interest in his family relationships.
¶ 124 In E.H.'s case, leaving open the possibility of appointing counsel when the State petitioned for termination of parental rights was not sufficient to diminish this risk. Contra lead opinion at 597-98. Dependency and termination proceedings do not deal with discrete events having isolated effects, but with the ongoing life, relationships, and well-being of the child and his or her family. Everything that happens in a dependency case can affect what happens in a subsequent termination case. And while not all dependencies lead to termination, for E.H., termination of parental rights was not, and is not, "merely potential or hypothetical." E.S., 171 Wash.2d at 705, 257 P.3d 570. Reunification is supposed to be the goal of dependency proceedings. RCW 13.34.020 ; K.J.B., 187 Wash.2d at 597, 387 P.3d 1072. However, the CASA was already recommending termination as the most appropriate outcome when the trial court denied the motion to appoint counsel. The possibility of termination has steadily increased since then.
¶ 125 Notably, while review was pending before this court, E.H.'s mother filed an emergency motion to stay the trial court proceedings. The case was about to move to the termination stage, with the trial scheduled to begin in early June. The CASA opposed staying the proceedings, reflecting her position that termination is in E.H.'s best interests. This court, however, granted the stay, recognizing that regardless of whether termination should ultimately be ordered, that decision cannot be made before this court has determined whether E.H. has been erroneously deprived of his right to appointed counsel.
¶ 126 In sum, because the trial court did not sufficiently account for the high risk that E.H. would be erroneously deprived of protected interests under the particular circumstances presented, I would reverse the ruling denying counsel.
CONCLUSION
¶ 127 I agree that the joint motion to seal should be granted, but I would hold that E.H. is entitled to appointed counsel in accordance with even the minimum standards set by the federal due process clause. These holdings would be sufficient to resolve the pending issues presented, so I dissent only in part.
¶ 128 However, as my analysis shows, article I, section 3 of the Washington Constitution is more protective of a child's right to representation in dependency cases than the Fourteenth Amendment, and our current *611 system of appointing counsel on a discretionary, case-by-case basis is failing to adequately protect the rights of children in dependency cases as a matter of Washington law.
González, J.
MADSEN, J. (concurring in dissent)
¶ 129 I agree with the lead opinion that the joint motion to seal should be granted. I write separately to agree with the dissent that E.H. is entitled to appointment of counsel under the standards set by the federal due process clause. I also agree with the dissent that this is sufficient to resolve the issues presented in this case. Accordingly, I concur in Part B of Justice Yu's dissent.

Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 37-39, 640 P.2d 716 (1982).

State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986)

I do not cite J.H. in connection to the fourth Gunwall factor or in relation to the issue, not presented here, of whether a child is a party in some technical sense. Contra lead opinion at 593 n.2. I cite it as recent precedent indicating a consistent trend of providing growing protections for a child's right to representation in family law cases. The legislative amendment referred to by the lead opinion is irrelevant to this purpose, as it merely changed the phrase "a child who is a party to the proceedings" to "a child who is the subject of an action." Laws of 1993, ch. 241, § 2(1). There is no indication that this amendment was intended to limit a child's right to representation, and I do not see how it could do so.

The decision of the superior court commissioner is not before us. Contra lead opinion at 597-98. The motion to appoint counsel was decided by a superior court judge following a motion to revise the commissioner's decision. Id. at 590. In a motion for revision, a judge reviews a commissioner's decision de novo, and appellate courts review only the judge's decision. Faciszewski v. Brown, 187 Wash.2d 308, 313 n.2, 386 P.3d 711 (2016).